**KENNETH ROSELLINI**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
 (973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff, Victor Mondelli*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR MONDELLI,<br><br>   Plaintiff,<br><br>             v.<br><br>BERKELEY HEIGHTS POLICE DEPARTMENT, MICHAEL P. MATHIS, Chief of Police of the Berkeley Heights Police Department, in his individual capacity, MICHAEL DELIA, Detective at the Berkeley Heights Police Department, in his individual Capacity,   JOHN DOE 1, Supervising Officer of Michael Delia, JOHN DOE 2, Berkeley Heights Police Officer in his Individual Capacity,   THOMAS BOCKO, Zoning Officer of Berkeley Heights, in his individual capacity, JACK SILVERMAN REALTY & MORTGAGE CO., L.L.C.,   BERKELEY REALTY PARTNERS 244, LLC, JACK SILVERMAN, in his individual capacity, WILLIAM SILVERMAN, in his individual capacity, FISCHER, PORTER & THOMAS, P.C., ARTHUR PORTER, JR., partner in Fischer, Porter & Thomas, P.C., in his individual capacity, ROBERT DOWLING, in his individual capacity, and JACK DOWLING, in his individual capacity,<br><br><br>   Defendants. | CIVIL ACTION<br><br>Case No. :<br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT and**<br>**JURY DEMAND** |

Plaintiff Victor Mondelli in the above-captioned matter, by and through his counsel of record, for his cause of action against Defendants, states as follows:

## PARTIES

1.      Plaintiff, Victor Mondelli ("Mondelli") is currently a resident of the State of New Jersey, whom was residing in Union County, New Jersey at times relevant to this Complaint.

2.      The Defendant, Berkeley Heights Police Department, upon information in belief is a Police Department located in Berkeley Heights, New Jersey, acted in concert and conspiracy with one or more of the other defendants during relevant times to this Complaint, and is liable for its acts and omissions done under color of state law.

3.      The Defendant Michael P. Mathis, upon information and belief, is the Chief of Police of the Berkeley Heights Police Department and is liable for his actions in his individual capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

4.      The Defendant Michael Delia, upon information and belief, is a Detective at the Berkeley Heights Police Department and is liable for his actions in his individual capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

5.      The Defendant John Doe 1, upon information and belief, is a Detective Supervisor at the Berkeley Heights Police Department and is liable for his actions in his individual capacity

done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

6.      The Defendant John Doe 2, upon information and belief, is a Berkeley Heights Police Officer, and is liable for his actions in his individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

7.      The Defendant Thomas Bocko, upon information and belief, is a Zoning Officer at the Berkeley Heights Zoning Department and is liable for his actions in his individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

8.      The Defendant Jack Silverman Realty & Mortgage Co., LLC ("JSRM"), is a mortgage company doing business in the State of New Jersey and is liable for its acts and omissions in its individual capacity done under color of state law. This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of

their actions.

9.      The Defendant Berkeley Realty Partners 244, LLC ("BRP"), is a real estate leasing company doing business in the State of New Jersey and is liable for its acts and omissions in its individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

10.      The Defendant Jack Silverman is a resident of the State of New Jersey and a principal of JSRM and BRP, and is liable for his actions and omissions in his individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

11.      The Defendant William Silverman is a resident of the State of New Jersey and a principal of JSRM and BRP, and is liable for his actions and omissions in his individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

12.      The Defendant Fischer, Porter & Thomas, P.C. is a professional corporation practicing law in the State of New Jersey and at all times relevant acted as attorneys for Jack Silverman, William Silverman and JRSM and is liable for its acts and omissions in its individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

13.      The Defendant Arthur Porter, Jr. is an attorney at law practicing law in the State of New Jersey as a partner in Fischer, Porter & Thomas, P.C. and at all times relevant acted as an attorney for Jack Silverman, William Silverman and JRSM and is liable for his acts and omissions in his individual capacity done under color of state law.  This Defendant acted in

concert with one or more of the other individual Defendants in the performance or conduct of their actions.

14.     The Defendant Robert Dowling is a resident of the State of New Jersey who acted as an agent of JSRM and is liable for his acts and omissions in his individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

15.     The Defendant Jack Dowling is a resident of the State of New Jersey who acted as an agent of JSRM and is liable for his acts and omissions in his individual capacity done under color of state law.  This Defendant acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

## JURISDICTION AND VENUE

16.     The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 *U.S.C.* §§1331, 1333, 1343  and 1367  which confer original jurisdiction upon the Court on the grounds that the instant action arises under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution for the United States of America, the Civil Rights Act of 1871, as amended, 42 *U.S.C.* §§1981, 1983, 1985, 1986 and 1988.

17.     Venue in the New Jersey District is properly laid pursuant to 28 U.S.C. §1391, in so far as the following alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the claims of the Plaintiff, arose within the geographical limits of this District.

## FACTUAL BACKGROUND

18.     Plaintiff, Victor Mondelli, is currently a resident of New Jersey, whom was residing in Union County, New Jersey at times relevant to this Complaint.

19.     Victor Mondelli has continuously operated a self-serve Garden Stand located at Block 80, Lot 24, 258 Springfield Avenue, Berkeley Heights, New Jersey since at least the early 1980s, and has never abandoned it.

20.     Since at least 1999, Victor Mondelli has operated self-serve Garden Stand as either an Owner of the property, a Tenant of the Property, or a Tenant at Sufferance, but always legal in possession of the property.

21.     The subject property is one of three which the Plaintiff owned with his elderly mother.

22.     The relevant properties are contiguous and located at 232 (residence-zoned residential), 240 (vacant lot-zoned mixed), 258 (commercial-zoned mixed), and 260-264 (commercial-zoned mixed) Springfield Avenue, Berkeley Heights, New Jersey.

23.     Due to the untimely deaths of his father (Vito Mondelli) and sister (Frances Mondelli), by the year 2004 Victor Mondelli was administering his sister's estate, which included a 50% interest in the residence, a 50% interest in the vacant lot, and a 100% interest in the commercial property.

24.     Anna Mondelli, Plaintiff's mother, owned the remaining interests in the residence and vacant lot.

25.     Victor Mondelli, a diagnosed Paranoid Schizophrenic, who is currently on SSI Disability and had no experience running commercial property, was having difficulties managing commercial property, and paying the property taxes.

26.     On February 18, 2004 Victor Mondelli voluntarily filed for personal Chapter 13 Bankruptcy, Docket 04-15268-DHS.

27.     At the time of filing, he was represented by counsel, but when creditors objected to confirmation of his initial Chapter 13 plan, he terminated his counsel and continued *pro se*.

28.     He then requested to the Court Clerk that his case be dismissed, which he was told would happen.

29.     As he was acting *pro se*, he did not know he had to file a formal motion and no one informed him he had to file a motion.

30.     The Chapter 13 Trustee recommended to the Court that the case be converted to Chapter 7 because Mondelli had equity that could satisfy all creditors' claims.

31.     On the return date of the confirmation hearing, October 21, 2004, without any motion pending to convert (as is required) or any allegations of a bad faith filing against Victor Mondelli (as is required to deny a good faith dismissal), the Court converted the case to Chapter 7.  Mondelli subsequently retained new counsel and the case was reconverted to Chapter 13 in February of 2005.

32.     By the Trustee's own calculations in 2005, "Based upon the assessed value of the property obtained by the Tax Assessor of the Township of Berkeley Heights, the value of the property [in the bankruptcy estate] using the equalization ratio", the value of the residence was $272,792, the vacant lot was $116,639, and the commercial property was $1,085,252.

33.     The initial scheduled debt was $48,068 unsecured and $144,860.58 secured, which was mostly property tax debt.

34.     Over the next two years Victor Mondelli was unable to refinance or satisfy his creditors, and the Court denied him his absolute good faith right to dismiss a Chapter 13 case—

resulting in a final conversion to Chapter 7 in February of 2007.

35.     By May of 2007 there was $410,157.31 in total debt.

36.     In May of 2007 there was a bona-fide offer of $1,300,000, made through the bankruptcy auction process, to purchase the only the commercial property from the Mondellis in "as is" condition.

37.     This would have left the Mondellis with the residence, the vacant lot, approximately $900,000 in cash, with only bankruptcy administration expenses to be paid.  But Victor Mondelli wanted to maintain his self-serve, non-profit, garden stand at its historical location at on the commercial property—which for several years had been used as a Christmas Tree Seasonal Sales Lot.

38.     Victor Mondelli was concerned about the legal consequences of moving the location of the Garden Stand, because he had previously won a bitter protracted litigation with Berkeley Heights in order to obtain a ruling that the use of the Garden Stand was grandfathered in, while Berkeley Heights was improperly interfering with Victor Mondelli's use and enjoyment of the property.

39.     In May of 2007 the Bankruptcy Court allowed Victor Mondelli the alternative of refinancing in May of 2007, but if the refinancing failed then the property would go to the winning bidder from the auction.

40.     JSRM represented to Victor Mondelli that it could arrange for a mortgage loan, contingent on a 99 year ground-lease being entered into and personal guarantees, which would allow for the Mondellis to keep the Garden Stand at its then current location.

41.     The arrangement entered into in May of 2007 consisted of a $650,000 loan at 13% interest due in full in 18 months in the amount of $820,000 (including additional fees).

42.     The note on the loan would be secured by the commercial property and the vacant lot, with personal guarantees.

43.     The Mondellis subordinated their interest in the property for purposes of construction-financing and permanent financing of a build-out by BRP.

44.     The ground-lease required BRP to apply for approvals for a 30,000 square feet building, a 500 square foot garden stand for the Mondellis, with payments to the Mondellis in the amount of $10,000 per month, minus mortgage payments, 180 days after the unappealable approvals had been obtained.

45.     The Mondellis would keep current rents until then, while BRP would pay property taxes and insurance.

46.     In May of 2007, this deal closed (with JSRM as the Mortgagee and BRP as the ground-lease tenant), with the Estate of Frances Mondelli transferring to probate estate property into the bankruptcy estate, and then being encumbered by the mortgages and ground-lease, with $650,000 in loan proceeds going to the Trustee.

47.     JSRM immediately assigned the mortgage to NY Urban (the entity which actually financed the loan at approximately 13% interest).

48.     Of the three storefronts, BRP occupied the middle store, with no rent to the Mondellis, and the Deli vacated by December of 2007—leaving the Mondellis with only rental income from Domino's Pizza, of approximately $2,700 per month.

49.     Within months, JSRM and BRP demanded that Victor Mondelli sign a subordination agreement so that they could borrow against the property.

50.     Because BRP was not yet in a position to perform construction, and the subordination was only for purposes of construction-financing and permanent financing of a

build-out by BRP, Mondelli refused to sign the agreement.

51.     This led to 1) a motion in the bankruptcy court by Victor Mondelli to terminate the ground-lease mortgage arrangement as, *inter alia*, unconscionable (because the Mondellis could not possibly pay $820,000 in 18 months and BRP and JSRM were improperly demanding subordination for a loan (a demand which they withdrew after the motion was filed; it wasn't until the Chancery proceeding in 2011-2012 that the Mondellis learned that the purpose of the demand was to use the property as collateral for JSRM to acquire monies to obtain an assignment back of the mortgage loan from NY Urban; instead, JSRM, using BRP's equity in the 99 year lease as collateral, obtained a $1,000,000 loan from City National Bank at a low interest rate, then had NY Urban assign the mortgages back to JSRM, while continuing to charge the Mondellis 13% interest), 2) objections by Victor Mondelli to the abandonment of the commercial property and vacant lot by the Trustee, and 3) a motion by JSRM and BRP to enforce prior orders and the ground-lease/mortgage.

52.     By September of 2007, therefore, JRSM, BRP and Victor Mondelli began a period of over six years protected and bitter complex litigation in state superior court, federal district court, federal bankruptcy court, and appeals in federal and state court.

53.     In or about March of 2012, JSRM obtained title to the subject real estate by way of a judicial foreclosure action and Sheriff's Sale in Union County.

54.     In or about July of 2012, JSRM and BRP, after a trial, obtained a judgment against Victor Mondelli for money damages in Chancery Court.

55.     However, no Writ of Possession, Warrant or Removal, or Order/Injunction requiring Victor Mondelli's removal issued from any Court, as was required by law in order to dispossess Victor Mondelli from his Garden Stand.

56.     The Union County Chancery Court issued a July 30, 2012 Opinion and Judgment that did not address issues concerning Victor Mondelli's and injunction as to Victor Mondelli's continued rights in the Garden Stand.

57.     Any title that JSRM or BRP obtained in Court was subject to the prior rights of tenants and to prior owners in possession as tenants at sufferance.

58.     Nothing in any Court's opinions or judgments states that Victor Mondelli's interests in the Garden Stand have been terminated.

59.     The opinions and judgments do quiet title in the property to JSRM, as the winning bidder in the foreclosure sale, which was subject to tenants' rights.

60.     Nothing states that JSRM or BRP received a Life Estate Tenancy, based on the lifespan of one Victor Mondelli, in the Garden Stand.

61.     Nothing in the opinions, judgments or Ground-Lease, states that the Life Estate Tenancy can be revoked.

62.     In fact, if it were revocable, it wouldn't be a life estate.

63.     In order for the Life Estate Tenancy to have been terminated, the issue would have actually been litigated and decided, but it wasn't.

64.     Any issues as to the interests that Victor Mondelli has in the subject Garden Stand as either a Tenant, Tenant at Sufferance or a Life Estate Tenant, therefore, have not been litigated in any Court, and Victor Mondelli is not precluded from asserting his rights thereto.

65.     On October 5, 2012, the interest that Victor Mondelli had in the Garden Stand located on BRP's Leasehold can only be characterized as that of a tenant subject to the fee simple interest of BRP.

66.     Since the effective date of the subject Ground-Lease with BRP, Victor Mondelli

had been a tenant operating a Garden Stand.

67.    Victor Mondelli, on October 5, 2012 was then properly in possession of the Garden Stand as either a Tenant or a Tenant at Sufferance, and the Defendants' brazen destruction of the Plaintiff Victor Mondelli's property and interference with his rights is a violation of due process of law.

68.    Victor Mondelli's rights to possess the Garden Stand were well established and known to all concerned on October 5, 2012.

69.    Under New Jersey law:

"[a] purchaser at a mortgage foreclosure sale obtains the legal right to possession of land purchased as soon as he obtains a deed from the selling officer." 30 New Jersey Practice, Law of Mortgages § 373. The mortgagor's continued possession of the property after such time is that of a tenant at sufferance. See Caruso v. Hunt, 69 N.J. Super. 447, 452 (Ch. Div. 1961) (quoting 2 C.J.S. Adverse Possession § 105, page 659). **Where the foreclosure judgment expressly awards possession to the purchaser, the purchaser is entitled, on application to the clerk of the court, to a writ of possession directed to the sheriff, who will be under a duty to place the purchaser in full and complete possession of the property.** See New Jersey Court Rule 4:59-2(b); 30 New Jersey Practice, Law of Mortgages § 373, 377. **Thus, upon issuance of a writ of possession, any possessory interest a mortgagor has vis-a-vis the purchaser, whether by tenancy at sufferance or otherwise, is expunged.** See foonote 3. See Mullarkey, 81 B.R. at 283.

*See In re St. Clair*, 251 B.R. 660 (D.N.J. 2000).


70. Under New Jersey law, a final judgment of foreclosure:


"declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction."*Roach,* supra, at 1378, citing *Eisen v. Kostakos,* 116 N.J. Super. 358,282 A.2d 421 (App.Div. 1971) and *Central Penn NationalBank v. Stonebridge Ltd.,* 185 N.J. Super. 289, 488 A.2d 498 (Ch. Div. 1982). Debtor retains legal title to the property until the completion of the process of sheriff's sale, expiration of the redemption period and transfer of the deed to the successful bidder. Through an "equity of redemption" stemming from New Jersey common law, debtor retains the opportunity to satisfy the judgment in full, and may redeem the foreclosed property even

after sheriff's sale by payment in full of the obligation. Following sheriff's sale, redemption is available within the 10 day period fixed by New Jersey Court Rule 4:65-5 for objections to the sale and until an Order confirming the sale if objections to the sale are filed. *Hardyston National Bank v. Tartamella,*56 N.J. 508, 513, 267 A.2d 495 (1970). **In addition, debtor retains possession of the property until a Writ of Possession is issued following the transfer of the sheriff's deed.**

*See Matter of Mullarkey*, 81 B.R. 280 (Bankr.D.N.J. 1987).

71.      Under the Due Process clauses of the Fourth, Fifth and Fourteenth Amendment to the Constitution for the United States of America, and under New Jersey law, therefore, all Defendants knew or should have known that Victor Mondelli was rightfully in possession of his Garden Stand until service of a Writ of Possession, Warrant of Removal, or some other form of Injunctive Order.

72.      As of October 5, 2012 Victor Mondelli remained in legal possession of the subject Garden Stand as either a Tenant of BRP or a Tenant at Sufferance.

73.      At no time has Victor Mondelli ever been served with a Warrant of Removal or a Writ of Possession so as to be legally divested of his rights of possession in the subject Garden Stand.

74.      On or about October 5, 2012, Victor Mondelli was maintaining firewood at the stand for sale, and was also storing approximately Two Thousand Dollars ($2,000) worth of equipment and vintage irreplaceable family memorabilia, including historical photographs of his family and ancestors.

75.      On October 4, 2012 a telephonic conference took place before the Chancery Judge in Union County New Jersey in which Counsel for Defendants Jack Silverman, William Silverman, JSRM and BRP (represented by Arthur Porter, JR. and Fischer, Porter & Thomas, P.C.), and Victor Mondelli's Counsel took part.

76.     Jack Silverman, William Silverman, JSRM and BRP claimed through their counsel that the Victor Mondelli was interfering with their rights by loading firewood onto the subject property in Berkeley Heights where Victor Mondelli has continuously operated the self-serve Garden Stand.

77.     Jack Silverman, William Silverman, JSRM and BRP claimed their rights pursuant to orders and judgments from the Union County Chancery Court.

78.     Victor Mondelli disputed these claims, and asserted that no order or judgment of the Chancery Court gave them such rights, that Victor Mondelli's rights in the Garden Stand were no terminated by the Chancery Court, and that the Garden Stand had been in continuous operation.

79.     The Chancery Court then directed Jack Silverman, William Silverman, JSRM and BRP to file either an Order to Show Cause or a Motion for the relief they were seeking, so that the issues could be properly adjudicated in accordance with due process under the laws of the State of New Jersey.

80.     Instead of filing the aforementioned motion or order to show cause, directed Jack Silverman, William Silverman, JSRM and BRP, on legal advice of Arthur Porter, JR. and Fischer, Porter & Thomas, P.C., and through their agents Robert Dowling and Jack Dowling, removed the firewood, damaged the Garden Stand, and removed approximately $2,000 worth of property, including items, pictures and memorabilia that had been in the Plaintiff Victor Mondelli's family for over a generation.

81.     In disposing of this property, which had great sentimental value to Victor Mondelli, JSRM, BRP, William Silverman, Jack Silverman, Arthur Porter, JR., Fischer, Porter & Thomas, P.C., Robert Dowling and Jack Dowling, all knew that the illegal disposal of this

property without due process of law would cause Victor Mondelli, a mental disabled individual, who had given up the rights to over $1 Million in a vain attempt to save the Garden Stand that had no monetary value, extreme emotional distress.

82.     In fact, JSRM, BRP, William Silverman, Jack Silverman, Arthur Porter, JR., Fischer, Porter & Thomas, P.C., Robert Dowling and Jack Dowling, knowingly illegally divested Victor Mondelli of his Garden Stand and illegally disposed of his personal property in order to intimidate Victor Mondelli and in retaliation for his protecting his due process rights through litigation.

83.     In doing so, Jack Silverman, William Silverman, JSRM and BRP, on legal advice of Arthur Porter, JR. and Fischer, Porter & Thomas, P.C., and through their agents Robert Dowling and Jack Dowling, falsely represented to the authorities in Berkeley Heights that Victor Mondelli had abandoned the property.

84.     BRP, JSRM, Jack Silverman, William Silverman, Robert Dowling and Jack Dowling had a financial interest in illegally divesting Victor Mondelli of possession of the Garden Stan because they entered into an agreement to profit from selling Christmas Trees off of the lot for the 2012 Christmas Season.

85.     In doing so, Jack Silverman, William Silverman, JSRM and BRP, with legal advice and approval of Arthur Porter, JR. and Fischer, Porter & Thomas, P.C., and through their agents Robert Dowling and Jack Dowling the Plaintiffs-Third-Party Plaintiffs failed to obtain any proper writ, warrant or order from any Court of Record with the authority to issue such process.

86.     Subsequent to the illegal removal of the subject property, Plaintiff contacted the Defendants Berkeley Heights Police Department, Chief of Police Michael P. Mathis, Detective

Michael Delia and Zoning Officer Thomas Bocko to inform them of the illegal actions and so that Victor Mondelli may have the peaceable use and enjoyment of his Garden Stand.

87.     Instead of enforcing the law and Constitutional Due Process, Victor Mondelli was informed by Detective Michael Delia and John Doe 2 that if he stepped anywhere near the Garden Stand he would be arrested for trespass.

88.     Chief of Police Michael P. Mathis failed to enforce the law and instead approved of and or directed Michael Delia and John Doe 2 to intimate Victor Mondelli from exercising his Constitutional due process rights and threaten to arrest him for the use and enjoyment of his own property, the subject Garden Stand.

89.     Defendant Michael Delia informed Victor Mondelli that supervising officer John Doe 1 had ordered him to arrest Victor Mondelli should he attempt to use and enjoy his Garden Stand.

90.     Zoning Officer Thomas Bocko informed Victor Mondelli that he was approving permits for Robert Dowling and Jack Dowling to use his Garden Stand for the use of selling Christmas Trees in the Christmas 2012 season, despite the fact that had illegally dispossessed Victor Mondelli of his Garden Stand and illegally destroyed his property.

91.     The Zoning Officer Thomas Bocko was motivated by the fact dispossessing Victor Mondelli of his Garden Stand would legally moot the hard fought for legal decision grandfathering in the use of the Garden Stand.

92.     Victor Mondelli subsequently learned that the Berkeley Heights Police Department had provided the security for Robert Dowling and Jack Dowling to illegal break the lock that Victor Mondelli had on the Garden Stand and to allow them, JSRM, BRP, Jack

Silverman and William Silverman to illegally dispossess the Plaintiff of his property without due process of law.

93.     Jack Silverman and William Silverman have been charged with and probable cause found for Disorderly Persons Criminal Offenses in connection with their actions, and these matters are pending in the Scotch Plains Municipal Court.

94.     Other criminal charges against Jack Silverman and William Silverman in connection with their conduct are currently under review by the Union County Prosecutor's Office.

## FIRST CLAIM FOR RELIEF

## 42 U.S.C.A. §1983 – CONSPIRACY IN VIOLATION OF FOURTH AMENDMENT, FIFTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANTS

95.     Plaintiff Victor Mondelli incorporates by reference the allegations contained in the above paragraphs, as though fully set forth here.

96.     Defendants reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated and acted on in conspiracy with all Defendants notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated.

97.     On information and belief, this meeting of the minds can be proven through Defendants incidents of abuse of process and from the repeating of that conduct in an effort to deny Victor Mondelli his rights of due process under the Fourth, Fifth and Fourteenth Amendments, and the use and enjoyment of his property.

98.     These conspiracies constituted and continue to constitute ongoing violations of 42 *U.S.C.* Section 1983.

99.     Any and all acts and omissions of Defendants, alleged in this complaint, constitute actions or omissions under the color and pretense of the laws, statutes, ordinances, regulations, customs, and usage of law.

100.    Defendants owed a duty to protect and serve the public, including Plaintiff and those similarly situated.

101.    Under the circumstances as they existed in this case these Defendants had a duty to not commit abuses of process.

102.    Defendants were acting under color of state law, instituted and followed policies, procedures in a manner that directly resulted in the objectively unreasonable abuse of process against Plaintiff resulting in injury.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, Berkeley Heights Police Department, Michael P. Mathis, Michael Delia, John Doe 1, John Doe 2, Thomas Bocko, Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

    A)      Damages in the amount of $10,000,000.00; and

    B)      Punitive Damages in the amount of $50,000,000.00; and

    C)      Awarding counsel fees to Plaintiff's legal counsel; and

    D)      Awarding Costs of Suit; and

E)     Interest; and

F)     Damages for Pain and Suffering; and

G)     For such other relief as the Court may determine to be appropriate.

### SECOND CLAIM FOR RELIEF

### 42 U.S.C.A. §1983 - VIOLATION OF DUE PROCESS AND EQUAL PROTECTION RIGHTS BY DEFENDANTS

103.    Plaintiff Victor Mondelli incorporates by reference the allegations contained in paragraphs above as though fully set forth here.

104.    The acts and/or omission of Defendants in this case were performed under color of law and deprived Plaintiff of his Fifth ("nor be deprived of life, liberty, or property, without due process of law") and Fourteenth Amendment ("deprive any person of life, liberty, or property, without due process of law . . ." and "no state shall ... deny to any person within its jurisdiction the equal protection of the laws") rights under the United States Constitution to due process, compulsory process, equal protection, and freedom from interference with his fundamental rights as a parent without due process of law.

105.    By virtue of this policy and conduct, Plaintiff's rights under the Fifth Amendment, and Fourteenth Amendment to the Constitution of the United States of America, have been violated.

106.    Defendants' acts and omissions furthermore interfered with Plaintiff's fundamental rights to privacy and freedom.

107.    Defendants' acts and/or omissions were a moving force behind an objectively unreasonable abuse of process against Plaintiff resulting in the above-referenced constitutional violations.

108.    The acts and/or omission of defendants in this case were performed under color of law and deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution to due process, equal protection.

109.    This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to cruel and unusual punishment and a deprivation of life and liberty under 42 U.S.C. Section 1983.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, Berkeley Heights Police Department, Michael P. Mathis, Michael Delia, John Doe 1, John Doe 2, Thomas Bocko, Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A)    Damages in the amount of $10,000,000.00; and

B)    Punitive Damages in the amount of $50,000,000.00; and

C)     Awarding counsel fees to Plaintiff's legal counsel; and

D)    Awarding Costs of Suit; and

E)    Interest; and

F)    Damages for Pain and Suffering; and

G)    For such other relief as the Court may determine to be appropriate.

**THIRD CLAIM FOR RELIEF**

**42  .S.C.A. §1983 - RETALIATION FOR PROTECTED ACTIVITY**

110.    Plaintiff Victor Mondelli incorporates by reference the allegations contained in above paragraphs, above, as though fully set forth here.

111.    Plaintiff Victor Mondelli has pursued avenues of defense of his property rights.

112.    This activity by Plaintiff is protected by the United States Constitution, specifically, the First Amendment, which states in pertinent part that "Congress shall make no law . . .  abridging the freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances" and Fourteenth Amendment to the Constitution, which states in pertinent part that  "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

113.    Defendants' conduct was done solely in retaliation for Plaintiff Victor Mondelli's exercise of her rights of due process and Plaintiff's exercise of his First Amendment rights in communicating seeking investigation of Defendants' actions.

114.    The above-described acts done by Defendants were in excess of any authority granted them by law, and were without justification or excuse in law.

115.    These acts are a blatant effort to punish Plaintiff for seeking due process relief against the events at issue in this case and for seeking recovery for his damages, and to intimidate him in his litigation of his rights.

116.    Defendants acted willfully, knowingly, and purposely, with the specific intent of depriving Plaintiff of his rights.

117.    The acts of Defendants did in fact deny Plaintiff his rights as those rights are secured to Plaintiff in the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and in 42 U.S.C.A. §1983.

118.    As a result of the actions of Defendants in retaliating against Plaintiff in opposition to Defendants' unlawful practices, Plaintiff has been damaged and has incurred great emotional distress, mental anguish, undue hardship, humiliation, inconvenience, and loss of enjoyment of life.

119.    As a further direct and proximate result of the above-described unlawful conduct of Defendants, Plaintiff will be required to expend money for legal costs and to secure recovery for damages incurred, in an amount not yet ascertained.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, Berkeley Heights Police Department, Michael P. Mathis, Michael Delia, John Doe 1, John Doe 2, Thomas Bocko, Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A)    Damages in the amount of $10,000,000.00; and

B)    Punitive Damages in the amount of $50,000,000.00; and

C)     Awarding counsel fees to Plaintiff's legal counsel; and

D)    Awarding Costs of Suit; and

E)    Interest; and

F)    Damages for Pain and Suffering; and

G)        For such other relief as the Court may determine to be appropriate.

**FOURTH CLAIM FOR RELIEF**
**(New Jersey Civil Rights Act)**

120.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

121.    Defendants have proximately caused the Plaintiff to suffer the deprivation of substantive due process, equal protection rights, privileges and/or immunities secured by the Constitution and/or laws of the United States, and substantive rights, privileges or immunities secured by the Constitution of the United States of America and the laws of the State of New Jersey, by their interference with the rights of the Plaintiff.

122.    In addition to the aforementioned Civil Rights and Constitutional Rights violations, the Defendants have violated Plaintiff's right to Due Process, Freedom of Speech, Freedom from Unreasonable Search and Seizure, Freedom to Exercise Religion and Right to Privacy under the Constitution of the State of New Jersey.

123.    By virtue of the foregoing acts, defendants have violated Plaintiff's rights under Section 10:6-2 of the New Jersey Statutes (the New Jersey  Civil Rights Act), as a result which Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, Berkeley Heights Police Department, Michael P. Mathis, Michael Delia, John Doe 1, John Doe 2, Thomas Bocko, Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and

B) Punitive Damages in the amount of $50,000,000.00; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and

E) Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

## FIFTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling)**

124.    Plaintiff incorporates by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

125.    The defendants' actions were willful and intentional, and were designed to cause plaintiff distress.

126.    As a result of this relentless barrage of harassment by the defendants jointly, plaintiff suffered health problems and has suffered other pecuniary injuries.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC ("BRP"), Jack Silverman, William Silverman, Fischer, Porter & Thomas, P.C., Arthur Porter, JR., Robert Dowling and Jack Dowling, jointly and severally, molded by the Court to maximize

the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A)     Damages in the amount of $10,000,000.00; and

B)     Punitive Damages in the amount of $50,000,000.00; and

C)      Awarding counsel fees to Plaintiff's legal counsel; and

D)     Awarding Costs of Suit; and

E)     Interest; and

F)     Damages for Pain and Suffering; and

G)     For such other relief as the Court may determine to be appropriate.

## DAMAGE CLAIMS AS AGAINST ALL DEFENDANTS

### PUNITIVE DAMAGES

127.    Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

128.    In addition to compensatory damages, Plaintiff hereby make a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiff's civil rights, as alleged in this complaint.

129.    The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including Plaintiff.

130.    Defendants committed the acts and omissions alleged in this complaint and

subjected Plaintiff to improper treatment that caused Plaintiff to suffer emotional distress so severe that no person should be expected to endure it.

131.    Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

132.    The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case.

133.    This instance of reckless and callous indifference to Plaintiff's safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that must not be tolerated.

## ATTORNEY'S FEES

134.    Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

135.    As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A. §1988 for those violations covered by the Civil Rights Act.

**DAMAGES**

136.    Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

137.    The acts and omissions of Defendants as set forth above have resulted in injury to Plaintiff.

138.    By virtue of these injuries, Plaintiff is entitled to the following damages from all defendants:

a)  Expenses associated with defense of Victor Mondelli's property rights; and

b)  Mental and emotional pain and suffering; and

c)  Humiliation and sociological distress; and

d)  Compensatory Damages in the amount of $10,000,000.00; and

e)  Punitive damages in $50,000,000 or a reasonable amount that is sufficient to adequately punish all defendants and to deter future conduct of the type alleged in this complaint; and

f)  The costs of this action, attorney's fees, and such other and further relief as this Court deems just and proper.

**JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey, Newark Vicinage.

/S/ Kenneth Rosellini

Dated: October 6, 2014

_____ _____
KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## CERTIFICATION

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration is contemplated, and I am not aware of any other person whom should be joined in this matter.

/S/ Kenneth Rosellini

Dated:  October 6, 2014

_____ _____

KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## TRIAL COUNSEL DESIGNATION

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.