# EXHIBIT A

SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF
JOHN F. MALONE
PRESIDING JUDGE, CHANCERY

COURTHOUSE
ELIZABETH, NEW JERSEY 07207

July 30, 2012

Arthur L. Porter, Jr., Esq.
Fischer, Porter & Thomas
180 Sylvan Avenue, 2nd Floor
Englewood Cliffs, NJ 07632

Kenneth Rosellini, Esq.
555 Preakness Avenue
Level Two, Four East
Totowa, NJ 07512

Re:   Jack Silverman Realty & Mtg Co., et al v. Mondelli, et al
      Docket No. C-16-11 & LT 1683-12

Dear Counsel:

This letter is the court's decision with respect to the trial of the referenced matter.

The plaintiffs, Jack Silverman Realty & Mortgage Co., LLC ("JSRM") and Berkeley Realty Partners 224, LLC ("Berkeley") commenced this action in the General Equity Part of the Chancery Division by complaint with order to show cause on February 3, 2011. The plaintiff sought to quiet title to property located in Berkeley Heights, New Jersey and to enjoin the defendants, Victor Mondelli ("Mondelli") and Anna Mondelli ("Mrs. Mondelli") from interfering with or obstructing redevelopment of the property. The defendants opposed the application and filed a cross-motion to dismiss foreclosure actions pending with respect to the property. In opposing the order to show cause, defendants raised

1

1a

issues of Mondelli's mental capacity, the purported unconscionability of the mortgages and ground lease on the property and Mondelli's right of redemption. The court granted the order to show cause, rejected defendants' contentions and denied the cross-motion. Defendants thereafter filed an answer and counterclaim, as well as a third-party complaint, against William Silverman, Jack Silverman and John Ponczek, the principals of Berkeley.

The claims in this case arose from a 2007 real estate transaction among the parties. The transaction included a loan by JSRM of $650,000 to the Mondellis secured by mortgages on a commercial lot and adjacent vacant lot in Berkeley Heights, New Jersey ("Property").

The plaintiffs' complaint seeks to quiet title and for specific performance. There are claims *inter alia* for turnover of rent, payment under the note and guaranties, interference with prospective economic advantage and fraud.

The Mondellis claim that the plaintiffs breached their obligations under the loan documents failing to pay the defendants any of the money due them and failing to restructure the 18 month mortgage loan as promised. In their counterclaim, in addition to seeking to quiet title, defendants raised claims among others of breach of contract and fiduciary duty, fraud and common law fraud, unconscionability and unjust enrichment. The third-party complaint raises issues of fraud and piercing the corporate veil.

Defendants assert that the delays encountered in completing this project are due to plaintiffs' own actions and unexpected hurdles put up by the

2

2a

Environmental Protection Agency or the municipality.  It is defendants' contention that plaintiffs have refused to pay rent under the ground lease, appropriated the rental income from the property, reneged on the agreement to refinance the loan and defrauded them of their property.

This matter was consolidated with an action commenced by the defendants in the Special Civil Part under a landlord-tenant docket.  That action filed on February 22, 2012 against Berkeley seeks to evict Berkeley from the property under the ground lease.  The claims raised are the same as those set forth in the General Equity counterclaim alleging breach of the ground lease by Berkeley.

## STATEMENT OF FACTS

Victor Mondelli was the owner of real property located on Springfield Avenue, Berkeley Heights, New Jersey known as Block 801, Lot 24 on which was located a three store strip mall.  Two of the stores were occupied, one by a Domino's Pizza, the other by a deli.  Mr. Mondelli maintained a garden stand on the premises.  Mr. Mondelli and his mother Anna Mondelli owned the adjacent vacant lot known as Block 801, Lot 23.  On February 18, 2004, Mr. Mondelli filed a voluntary petition for Chapter 13 bankruptcy protection.  The bankruptcy was converted to a Chapter 7, reconverted to Chapter 13 and finally again converted to a Chapter 7 and the trustee was reinstated.  In the bankruptcy proceeding Mr.

3

3a

Mondelli was unwilling to sell his Berkeley Heights property; however, had not been able to obtain financing to satisfy his debts.

In early 2007, Mondelli approached JSRM through a broker John Ponczek. Mr. Mondelli proposed a transaction to Ponczek involving a mortgage loan on the property to be brokered by JSRM and a 99 year ground lease of the property to JSRM or an affiliate to permit JRSM to redevelop the property at JRSM's expense. Mondelli was familiar with retail real estate in the area and told Ponczek that he understood from discussions with others that the property was suitable for a 30,000 square foot retail development. Negotiations regarding the transaction continued by Mondelli and his attorney, Herbert Levenson; however, no agreement was reached and negotiations ended.

Mondelli was unable to secure other financing for his property but he continued to resist the sale of the property in bankruptcy court. Mondelli again contacted Ponczek who resumed negotiations with Mondelli and Levenson. Mondelli sought a life estate in one of the stores to be built on the property so that he could operate his garden stand business. Mondelli and Levenson also met with Jack Silverman of JSRM to discuss the proposed transaction.

Silverman arranged a meeting with John Lama of New York Urban Real Estate Investments to discuss a loan to Mr. Mondelli so that he could avoid a forced sale of the property in bankruptcy. Mondelli and Levenson met with Lama to discuss the property and proposed project. Lama refused to make a loan to Mondelli, but agreed to make a loan to Silverman to provide financing to

Mondelli.  The offer was initially rejected by Mondelli; however, he contacted Ponzcek to revive negotiations several weeks later.

On April 27, 2007 an order was entered in bankruptcy court allowing Mondelli to enter the proposed mortgage and ground lease with JSRM and its affiliate provided the transaction closed by May 16, 2007.  The trustee had obtained a bid of $1.3 million "as is" through an auction.  The trustee was authorized to sell the property on June 8, 2007 in the event the closing could not be concluded.

On May 16, 2007 the transaction involving Mondelli, JSRM and Berkeley closed.  JSRM loaned $650,000 to Mondelli secured by mortgages on Lots 23 and 24 in Block 801.  The funds were turned over to the bankruptcy trustee to pay Mondelli's creditors.  Mondelli's debt consisted primarily of unpaid real estate taxes, counsel fees and costs and the bankruptcy trustee's fees and costs.  Mondelli was also charged fees by the lender consisting of points and attorney's fees.  Mondelli executed a ground lease with Berkeley.  The ground lease provided that Berkeley would commence payments under the lease 180 days after unappealable approvals were obtain from the municipality.  The payments were to be based upon the actual amount of retail space approved calculated at $4 per square foot. The transaction which took place had been approved by the bankruptcy court.

Anna Mondelli participated in the transaction as co-owner of Lot 23.  The Mondellis were represented by Levenson who spent a considerable amount of

5

5a

time at the closing reviewing and reading documents with his clients.  During the closing, Levenson together with the Mondellis, negotiated an addendum to the ground lease regarding the garden stand, the Mondellis right to continue to collect rents from the tenants at the existing strip mall during the planning and development of the project and Berkeley's right to occupy one of the stores in the existing mall during the approval phase.  Mondelli participated in these negotiations.  Mondelli contends that Silverman and Ponczek represented to him that they would assist him in obtaining a refinance of the 18 month mortgages to a longer term.

Several months after the transaction closed Mondelli represented by new counsel, Kenneth Rosellini, sought to undo the transactions.  On September 20, 2007 Mondelli through counsel filed an objection to the trustee's abandonment of the property which was the collateral for the mortgages to JSRM and was subject to the 99 year ground lease to Berkeley.  Mondelli also appealed the consent orders through which the closing had been approved by the bankruptcy court. The bankruptcy court granted JSRM's motion to enforce the ground lease.  The consent orders were upheld by the bankruptcy court.

Mondelli continued to seek to void the transaction through the bankruptcy court and appeals to the District Court and Court of Appeals.  Overall Mondelli filed 8 appeals to the District Court from orders issued in bankruptcy court and 4 appeals to the Third Circuit.  One appeal to the Court of Appeals regarding

bankruptcy court orders remains pending; all other appeals were dismissed or denied.

In addition to filing numerous motions and appeals seeking to avoid the mortgages and ground lease transaction, Mondelli also refused to execute a subordination agreement to permit JSRM to refinance the loan it obtained to finance the to loan made to Mondelli.  Mondelli also refused to sign off on Berkeley's application to the township zoning approval and opposed Berkeley's application for a certificate of occupancy for the store it was to occupy in the existing strip mall.  Mondelli also attempted to evict workers at the property who were attempting to take soil samples.

In July 2010 Berkeley's applications for zoning variances and site plan approval were granted by the Berkeley Heights Board of Adjustment.  The project as finally approved consisted of two retail buildings totaling 12,650 square feet, a day care center of 5,933 square feet and attendant parking.  Based on the ground lease the total of 19,475 square feet of space would yield an annual ground lease rent to Mondelli of $77,900.  JSRM and Berkeley have not been able to obtain construction financing for the project because of the continuing State and Federal litigation challenging the validity of the ground lease.

On November 16, 2008 the Mondellis defaulted on their mortgage to JSRM by failing to make payment of principal and interest.  JSRM brought foreclosure actions on the mortgages by complaints filed July 30, 2009.  The

7

7a

Mondellis did not file an answer in the foreclosure actions resulting in the entry of default. Judgments of foreclosure were entered on September 6, 2011 and writs of execution were issued November 29, 2011 in the foreclosure action. The properties were scheduled for sheriff sale on February 1, 2012.

On January 3, 2012 the Mondellis filed motions in the foreclosure actions seeking to consolidate the foreclosures with this matter pending in General Equity, to stay the sale until completion of the General Equity case and to vacate the judgments of foreclosure. All motions were denied on January 20, 2012. Mondelli obtained a statutory stay of the sale from the sheriff to February 29, 2012.

Following the rescheduling of the sheriff's sale to February 29, 2012 defendants filed a number of pleadings seeking to postpone the sale. These actions included:

February 27 – order to show cause to stay the sale as not properly advertised and posted, denied by this court and motion for emergent appeal denied.

February 28 – bankruptcy petition filed by Ana Mondelli resulting in stay of sale.

March 7 – on plaintiffs' motion dismissal of the petition by the bankruptcy court, sale was rescheduled for March 14.

March 14 – bankruptcy petition filed by Victor Mondelli resulting in stay of sale.

8

March 19 – on plaintiffs' motion the bankruptcy court dismissed the petition. The sale was re-listed for March 21.

March 20 – Mondelli filed an order to show cause to extend the right of redemption until after the completion of this action or to escrow sale funds to satisfy Mondellis' claim for rent. The motion was denied.

March 21 – the sale was conducted and the property sold to the plaintiffs for a nominal bid of $100.

March 30 – order to show cause by Mondelli to extend the right of redemption which was denied on April 2, 2012. The Appellate Division also denied a motion to file an emergent appeal.

## **SUMMARY OF PLEADINGS**

Plaintiffs' complaint articulates 12 counts against the defendants. Several of the counts address the title to the subject property. These counts which seek to quiet title, compel specific performance, void the ground lease and transfer title and turnover rent (counts one, two, four and five) have largely been addressed by the fact that the property was sold to plaintiff at sheriff sale on March 21, 2012. The sheriff's deed was recorded on May 17, 2012 vesting title in JSRM. No further relief vesting title in plaintiffs or allowing plaintiffs to collect rent is necessary in this action.

Counts 6 and 7 concern the deficiency under the note and the obligation of the defendants under the guaranties. Related to these claims is count 8 for

unjust enrichment. There are also in counts 9, 10, 11 claims for breach of the implied covenant of good faith and fair dealing, interference with protective economic advantage and fraud. The plaintiff seeks punitive damages (count 12) and an injunction against defendants' interference with the redevelopment of the property (count 3).

In their counterclaim the Mondellis seek in count 1 to quiet title by having the foreclosure judgments overturned and the sheriff's sale vacated. They bring claims of breach of the implied covenant of good faith and fail dealing and breach of contract in counts 2 and 5. There are fraud counts of common law fraud (count 6) and consumer fraud (count 8). The remaining counts are for breach of fiduciary duty, unjust enrichment and unconscionability (counts 3, 4 and 7).

The third-party complaint is against the individual members of Berkeley for fraud and defendants also seek to pierce the corporate veil.

In the consolidated landlord-tenant action the Mondellis seek possession for unpaid rent (count one) and for breach of lease (count two).

The defendants have argued in this action that they have established that the mortgages were invalid and unenforceable. Although the foreclosure actions were unopposed by the defendants resulting in the entry of default judgments, the defendants in this action sought to dismiss the foreclosure complaints and to invalidate the mortgages and overturn the judgments.

The court addressed dismissal of the complaints in denying the defendants' cross-motion filed in response to plaintiffs' order to show cause application by amended order of June 1, 2011.

## QUIET TITLE CLAIMS

The claim that the foreclosure judgments and sheriff sale should be overturned and vacated is denied and defendants' count 1 of the counterclaim to quiet title is dismissed.  The Mondellis entered into the ground lease and mortgages freely, voluntarily and with the advice of counsel.  The Mondellis were represented by counsel at all time during the negotiations and closing.  Counsel took an active role participating in the transaction and representing the interest of his clients. Although Mr. Mondelli claims to be unsophisticated in business matters he was able to participate in meetings in which he articulated his desire not to sell the property, to enter a ground lease, to borrow money sufficient to pay his creditors in bankruptcy and avoid the sale of the property.  He was able to assist his attorney in negotiating for the right to operate a garden stand.

The defendants claim that Mr. Mondelli lacked mental capacity to enter the transaction is without merit.  Defendants offered no evidence to support the claim.  Plaintiffs' psychological expert based upon an examination of Mr. Mondelli and review of his records found no basis to support the conclusion that Mr. Mondelli lacked the capacity to understand and consent to this transaction.  The plaintiffs' expert Mark Siegert PhD stated that even if Mr. Mondelli's reported

diagnosis of paranoid schizophrenia was accurate such a diagnosis would not mean that Mr. Mondelli was unable to understand or consent to the transaction.

The Mondellis with the assistance of counsel negotiated for and received an agreement which met their stated objections of keeping title to the property, paying off creditors and obtaining the right to run a garden stand. There is no basis to reverse the foreclosure judgments and take the property away from JSRM.

Plaintiffs' claim for quiet title conversely is supported by the facts of the case. Plaintiff JSRM received mortgages from defendants and initiated foreclosure actions when defendants failed to meet their obligations under the loan documents. The foreclosure actions are complete and title is vested in JSRM. Judgment will be entered in favor of plaintiff JSRM to quiet title to the property and requiring defendants to discharge their *lis pendes.*

Since title to the property is properly vested in JSRM the counts of the complaint seeking specific performance of the ground lease (count 2) and voiding of the lease and transferring title to plaintiff (count 4) are dismissed. Count 5 of the complaint for the turnover of rent is dismissed as moot.

**PLAINTIFFS' DEFICIENY ACTION**

Plaintiffs argue that the claims on the note and guaranties are clearly established by the documents executed by the Mondellis. The defendants argue that the loan documents are unenforceable due to unconscionability and

12

12a

fraudulent inducement in the transaction.  In support of this contention Mondelli argues that the transactions he entered were not advantageous to him.  He points out how he would have been able to realize a profit through a sale of the property or obtaining alternate financing to pay off his creditors.  Mondelli asserts that he entered the mortgages and ground lease because he was induced to do so by the plaintiffs' "rosy scenario" and promise that they would provide a long-term mortgage loan.

The facts as established at trial do not support the defendants' claims. First, it is clear that the general outline and elements of the transaction were set by Mondelli.  He wanted to retain ownership of the property which had been in the family for many years.  Therefore, the concept of a ground lease rather than sale originated from Mondelli.  He also needed money to pay his creditors and despite the fact that he twice cut off negotiations with plaintiffs asserting that he had alternate sources of financing, he returned to plaintiffs seeking a loan. Finally, he requested the inclusion of a garden stand and established it as a key element of the deal.

A fact overlooked by Mondelli in his arguments about the transaction was his representation by Mr. Levenson.  Mondelli suggests that he was unsophisticated in business matters, mentally incapacitated and taken advantage of by the plaintiffs.  However, the record is clear that in every aspect of the transaction Mondelli was represented by counsel.  The testimony of the people who participated in the closing indicated that Mr. Levenson was an informed,

13

diligent, competent advisor to Mondelli.  There is no dispute that Levenson represented Mondelli and negotiated the transaction consistent with Mondelli's goals.

Additionally, there is simply no evidence of an agreement by the plaintiffs to provide long term financing to replace the 18 month $650,000 loan Mondelli used to pay his creditors.  It is not logical or believable that Levenson would read documents aloud to his client at the closing, interrupt the closing to reopen negotiations about the garden stand but not memorialize a commitment to extend the loan or refinance the mortgages.

The record supports plaintiffs' contention that JSRM would assist Mondelli in finding an institutional lender to refinance the loan when the project was built.  Plaintiffs told Mondelli they were willing to discuss a restructuring of the loan but that offer was not pursued by Mondelli.  These offers do not constitute a breach of the loan documents and did not create an agreement on the part of plaintiffs to refinance the loan.  The obligation to seek alternate financing was Mondellis' responsibility and his failure to do is not the fault of plaintiffs.

It is not disputed that the Mondellis executed the note and guaranties and defaulted under the terms of those documents.  The sheriff's return of execution after the sale indicated a deficiency of $1,153,726.42.  Interest continued to run at the rate of $302.7397 per day pursuant to the final judgment of foreclosure.  Plaintiffs are awarded damages in the amount of the deficiency, plus the per

diem interest from May 21, 2012 to the time of payment, plus counsel fees and costs.

The Mondellis also executed personal guaranties of the amount due under the note and thus, they are jointly and severally liable for the deficiency.

The defendants raised the objection that the property was sold below fair market value; however, offered no evidence to establish that value at either the motion to set aside sale or at trial.  Furthermore, defendants did not seek a fair market value hearing pursuant to *R.* 4:65-5.

With respect to the eighth count of the complaint, it is undisputed that Mondelli received the benefit of the $650,000 loan proceeds.  As a result of the payment by JSRM to the bankruptcy trustee, Mondelli's debts were paid and the bankruptcy discharged.  Plaintiffs also expended substantial amount of money in carry costs, fees and expenses in proceeding with efforts to develop the property.  The defendants have received the benefit to the extent that plaintiffs paid the real estate taxes, insurance, produced plans, and obtained approvals for a redevelopment project that enhanced the value of the property.

Judgment is entered on count 8 of the complaint for unjust enrichment and plaintiffs are entitled to the compensatory damages as set forth in the decision regarding count 6.

Judgment will be entered in favor of plaintiffs on counts 6, 7 and 8 of the complaint.

**INJUNCTIVE RELIEF**

The court granted preliminary injunctive relief enjoining the defendants from interfering with the redevelopment of the property.  The record before the court indicated that Mondelli was abusive to workman who entered the property and threatened to have them removed from the property.  There remains a need to prevent interference with plaintiffs' right to have its agents, employees and contractors access the property.

Judgment will be entered on count 3 of the complaint and defendants are permanently enjoined from interfering with development of the property or any efforts by the plaintiffs to convey the property.

**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Both parties have made claims of breach of the implied covenant of good faith and fair dealing (complaint, count 9, counterclaim, count 2).  To establish the claim each party must prove by a preponderance of the evidence:  (1) the existence of some type of contract; (2) that the defendants, although acting in accordance with the contract's terms (that is not guilty of breach), acted in bad faith with the intent to deprive the plaintiff of his or her reasonable expectations under the contract; and (3) the plaintiff sustained injury or loss as a result of such action.  *Wade v. Kessler Inst.*, 334 *N.J. Super.* 338, 348 (App. Div. 2001), *aff'd as modified*, 172 *N.J.* 327 (2002)

The plaintiffs contend that Mondelli never intended to satisfy the $650,000 loan and instead planned to avoid the debt by claiming that he lacked capacity to enter the transaction. The plaintiffs further claim that Mondelli improperly refused to sign subordination documents, wrote to the township to oppose the zoning application, attempted to evict workers from the property and filed numerous motions and appeals to avoid the ground lease. Plaintiffs assert that all of Mondellis' opposition and obstruction was done in bad faith to prevent plaintiffs from developing the property. Plaintiffs contend that they are entitled to compensatory damages for costs and loss of profits related to the inability to develop the project and for punitive damages.

Defendants contend that they were justified in seeking termination of the transaction since the plaintiffs breached both the ground lease and their agreement to provide refinancing of the mortgages given by defendants.

With respect to the ground lease, Mondelli contends that the plaintiffs improperly demanded that he sign a subordination agreement to allow them to refinance their loan which was used to fund the $650,000 loan to Mondelli. Defendant asserts that Berkeley's demand for a subordination agreement constituted a breach of the ground lease. The ground lease provided that defendant would agree to subordinate for development or permanent financing on the property but did not require a subordination of the mortgage for other purposes. Furthermore, defendant points out that his subordination was not

17

necessary for Berkeley to refinance its loan and that defendant had the right to refuse.

Defendant also contends that plaintiffs breached the agreement by failing to refinance the 18 month loan advanced to him. Mondelli claims that the plaintiffs understood that he had no ability to make monthly payments on the $650,000 loan at 13% interest for 18 months. His income was limited to rents from 2 of the stores and the plaintiffs knew that he would need to refinance the mortgage based on the income he would be receiving under the ground lease. Defendant also contends that plaintiffs knew he was not a sophisticated businessman and relied upon their representations.

Despite their knowledge of the situation and promise to refinance, plaintiffs breach the agreement. According to defendant, the plaintiffs knew that the only possible outcome of the ground lease and mortgage transactions would be his default. Nevertheless, plaintiffs refused to locate a source of refinancing for defendant.

Defendant asserts that plaintiffs claim that he never intended to honor their agreements is incorrect. He argues that he did not seek to terminate the agreement until Berkeley breached the ground lease by demanding the subordination and refusing to assist in refinancing the mortgage. Mondelli points to actions he took to facilitate the transaction such as allowing JSRM to utilize his property appraisal and allowing Berkeley to use a store in the strip mall without additional consideration. Contrary to the claims that he acted in bad faith and

18

18a

did not contend to honor his agreement, Mondelli claims his efforts to terminate the deal were only in response to plaintiffs' breach.

Defendant also asserts that he did not prevent the plaintiffs from developing the property and did not cause any damages to plaintiffs. Mondelli notes that initially plaintiffs were unable to proceed to obtain approvals for 1 year pending resolution of a wetlands issue with the DEP and EPA. Subsequently, a second year of delays resulted from the submission of an application which did not conform to the township's master plan. Moreover, when the application was submitted plaintiffs did not seek to obtain approval for a 30,000 square foot development but only applied for 19,000 square feet. Mondelli argues that he had no control over any of these events and did not cause any delay or take any action to cause a smaller project to be approved.

Plaintiffs claim that defendants breached implied contractual provision must fail as it relates to claims that defendants breached express terms of the contract, namely making payments due under the mortgage. The claims of breach of the implied covenant would need to be based on a claim that defendant although not in breach of any express provisions of the contract have violated the implied covenant. In this case plaintiffs assert that defendants did breach the contract. The alleged acts of bad faith are related to counts of interference with prospective economic advantage and punitive damages. Accordingly, count 9 of the complaint is denied.

19

19a

Defendants' claim of breach of the implied covenant of good faith and fair dealing is based upon the contentions that plaintiffs failed to pay rent under the ground lease, failed to apply for the maximum retail square footage allowable for development and to provide the defendants with permanent mortgage to replace the 18 month mortgage.

Defendants' claims on this count fail for several reasons. There can be no breach of the implied covenant unless the parties have a contract. *Wade, supra.*, 172 *N.J.* at 345. In this case there is no proof of a contract between the parties requiring plaintiff to refinance the 18 month loan. The court concludes based upon the testimony of John Ponczek that JSRM agreed only to do what it could to help Mondelli refinance. Mr. Mondelli did not contradict this testimony and did not testify that anyone made a specific promise to provide him with a long term mortgage. Furthermore, there is no evidence that defendants ever attempted to refinance the loan.

There is also no proof of a contract obligating plaintiffs to file an application to build a 30,000 square foot retail building. The ground lease reference to 30,000 square feet did not establish a minimum size building plaintiffs were required to develop. This is evidenced by the fact that the plaintiffs protected themselves by including a rent adjustment provision in the ground lease. Under the ground lease if Mr. Mondelli's projection of a 30,000 square foot development was incorrect the rent would be adjusted accordingly.

20

20a

There is no evidence of a contract requiring a 30,000 square foot development and defendants implied covenant claim based on that assertion is dismissed.

Finally, defendants claim that plaintiffs failed to pay rent due under the ground lease cannot support the claim of breach of an implied covenant since rent payment is an express provision of the lease and defendants' claims that plaintiffs are in breach of the contract. As noted above, one of the elements of this cause of action is that there is no breach of the contract, but rather compliance coupled with bad faith. Accordingly, count 2 of the counterclaim is dismissed.

### FRAUD

Both plaintiffs and defendants have made claims of fraud in this litigation, (complaint, count 11, counterclaim count 6 and defendants' third-party complaint, count 1). Fraud consists of five elements: (1) material representation of a presently existing or past fact; (2) made with knowledge of its falsity; (3) with the intentions that the other party rely thereon, (4) reliance by the other party; and, (5) damage to the other party as a result of the reliance. *Kaufman v. i-Stat Corp.,* 165 *N.J.* 94,109 (2000).

Plaintiffs contend that the Mondellis misrepresented their intent to honor the agreements they were making. The plaintiffs assert that Mondelli intentionally misrepresented his intention to perform the loan agreement and

21

ground lease to induce JSRM to lend him $650,000 to pay off his creditors.  The loan was made based upon Mondelli's expressed intention to honor the agreements.  Plaintiffs assert that as a result of reliance upon the intentional misrepresentations, plaintiffs lost principal and interest, the soft costs they incurred in planning the project, carrying costs for the property and loss of rental income from the building they intended to construct.

Defendants claim that plaintiffs misrepresented the income defendants would receive from the ground lease by indicating there would be money to cover the mortgage payments and provide for a living income.  In the third-party complaint the defendants contend that William Silverman, Jack Silverman and John Ponczek as principals of plaintiffs are personally liable for fraudulent acts of plaintiffs because they personally directed and knew about the acts.

In order for plaintiffs to prevail on a claim of fraud, plaintiffs must prove that defendants made representations (that they intended to make mortgage payments) knowing the representation to be false and intending the plaintiffs to rely on it.  For a statement of future conduct to be actionable under fraud it must be shown that the defendants promise to perform a certain act in the future but had no intention of carrying it out.  Otherwise an unfulfilled promise to perform a future act gives rise to a claim for breach of contract, but not fraud.

The court cannot conclude that the defendants intentionally misrepresented their intention to make mortgage payments.  The fact that defendants met with present counsel prior to the closing of the mortgage

22

22a

transaction does not lead to the conclusion that it is more likely true than not that defendant was planning to default on the loan. The transaction as structured would have created income to defendants under the ground lease sufficient to make payments. Had the project been completed as the parties anticipated, plaintiffs would have owed money to defendants on a monthly basis adequate to cover the amount due. Furthermore, plaintiffs would have controlled the money due to the defendants. Although there was no obligation to off-set mortgage payments against rental income, plaintiffs were in a position to seek approval to do so if defendants failed to make mortgage payments. The plaintiffs claim based upon fraud is dismissed.

Defendants' claims of fraud against plaintiffs and third-party defendants are also dismissed. There is no proof of the alleged misrepresentation. The agreement as negotiated by defendants with the assistance of counsel stated the obligation of the plaintiffs under the ground lease. Defendants' income would be directly related to the square footage of the developed retail space. The risk that the project would not be approved at the benchmark of 30,000 square feet was known to all parties and provided for in the agreement. The parties hoped that the municipality would approve a larger project, but there is no evidence of fraud on the part of plaintiffs or third-party defendants. Defendants' fraud counts are dismissed.

**INTERFERENCE WITH PROSPECTIVE ECOMONIC ADVANTAGE**

**PUNITIVE DAMAGES**

Plaintiffs assert that despite their best efforts to fulfill their responsibilities under the loan documents and ground lease, defendants intentionally acted to abrogate the ground lease, prevent zoning approval, obstruct development and regain possession of the property.  It is plaintiffs' contention that defendants' conduct constitutes interference with prospective economic advantage entitling plaintiffs to an award for damages.  (complaint, count 10)

The tort of interference with a business relation or contract contains four elements:  (1) a protected interest; (2) malice that is defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages. *DiMaria Construction, Inc. v. Interarch*, 351 *N.J. Super.* 558, 567 (App. Div. 2001).  In order for a plaintiff to prevail with this claim it must be shown that plaintiff had a reasonable expectation of economic benefit.  *JEM Marketing, LLC v. Cellular Telecommunications Industry Association,* 308 *N.J. Super.* 160 (App. Div. 1998).   Plaintiff must also show that defendants' conduct was without justification or excuse and but for that conduct plaintiff would have received economic benefits.  Plaintiff must also demonstrate the damages sustained as a result of the interference.

Four months after the closing and disbursement of loan funds to the bankruptcy trustee on defendants' behalf Mondelli began a campaign to overturn

24

24a

the transaction. Mondelli asserts that the ground lease was unconscionable and therefore, justified his efforts to terminate the ground lease. There is no basis for Mondelli's assertion of unconscionability. As noted, the agreement between the parties provided Mondelli with all of the requirements of the transaction he established. The agreement was negotiated not by an unsophisticated layman as Mondelli argues, but by an experienced transactional attorney who represented Mondelli's interest throughout the deal. Mondelli was aware that his ability to meet his obligations under the lease was questioned by the trustee. Nevertheless, Mondelli represented by counsel sought and obtained approval to enter the transaction. It is clear that preserving ownership of the property and having the run to operate a garden stand were a paramount importance to Mondelli.

Notwithstanding the existence of the mortgage, ground lease and the fact that Mondelli's debts had been satisfied he made unreasonable and unjustified attempts to avoid his obligations under the transaction. Mondelli executed the ground lease with full understanding that the plaintiffs planned to develop the property for retail uses but then he opposed their application for zoning approval. Mondelli agreed to allow plaintiffs to use one of the stores in the strip mall, but then opposed their application for a certificate of occupancy. He attempted to prevent plaintiffs' engineers from testing the soil at the site. He entered consent orders authorizing the transaction, tried to have the orders vacated and continues litigation despite the fact that the orders were upheld on

appeal.  Three years after the transactions, Mondelli raised for the first time the issue of his mental capacity to enter the transactions.  The unopposed testimony of plaintiffs' psychological expert is that there is no evidence to support the conclusion that Mondelli lacked capacity to enter the transaction and that he was falsifying and exaggerating his reported symptoms.

These efforts by Mondelli were for the sole purpose of attempting to undo the transaction after having received the benefit.  Mondelli's unjustified actions have made it impossible for plaintiffs to obtain construction financing and build the facility.  Plaintiffs are unable attract commercial tenants.  As a result of Mondelli's interference with plaintiffs' efforts to build and lease the proposed project, plaintiffs sustained damages entitling plaintiffs to compensatory damages.

Furthermore, Mondelli's opposition serves no legitimate commercial interest and can only be intended to injure plaintiffs.  Accordingly, plaintiffs are entitled to punitive damages.  Punitive damages are appropriate when the conduct of the defendant constitutes intentional wrongdoing accompanied by willful disregard of the rights of another.  *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 *N.J.* 37 (1984).  It is clear that Mondelli had no regard for the consequences to plaintiffs of his actions.  Proof of his disregard for his obligations in these transactions can be found in his trial testimony in which he referred to the documents as "toilet paper."

Plaintiff Berkeley seeks compensatory damages in connection with this matter as follows:

a. "soft costs" of planning and gaining approvals for the project, consisting of $299,714.73;

b. To plaintiff Berkeley, compensatory damages for the carrying costs of the project during the extended period in which the Mondellis prevented plaintiffs from obtaining construction funding, consisting of $560,214.49;

c. To plaintiff JSRM, compensatory damages for closing costs totaling $49,819.74 for the NY Urban loan;

d. To plaintiff JSRM, compensatory damages for origination costs and renewal fees to City National Bank totaling $8,500.00;

e. For attorneys' fees incurred in order to enforce the loan agreements and ground lease and collect amounts due under the promissory note and personal guaranties, consisting of $88,379.01, plus legal fees and costs incurred by plaintiffs with Fischer Porter & Thomas, P.C.

The court finds that plaintiffs' "soft costs" were not incurred as a result of defendants' conduct. These costs were related to obtaining approvals from the municipality which was plaintiffs' obligation under the transaction. Plaintiffs retain the benefit of these expenditures and this item of alleged damages is denied. The balance of the damages was incurred as a direct result of defendants' conduct and therefore, compensatory damages of $706,913.24 are awarded to plaintiffs, plus legal fees and costs.

27

The court finds that plaintiff Berkeley is entitled to punitive damages of $350,000 as a result of Mondelli's willful obstruction and interference with Berkeley's rights under the ground lease. JSRM's request for punitive damages under the mortgage is denied since Mondelli's unwarranted efforts were designed to undermine the ground lease and cause financial damages to Berkeley.

## DEFENDANTS' COUNTERCLAIM

The remaining counts of defendants' counterclaim are dismissed. There is no basis to reverse the foreclosure judgments and the conveyance of the property at sheriff's sale to JSRM. The defendants, in count 1, seek to quiet title asserting that the mortgage transaction was unconscionable. The defendants contend that the mortgage was based upon misrepresentations that fraudulently induced the defendants to execute the mortgage. As previously outlined there is no evidence of fraud on the part of plaintiffs. The defendants defaulted on a loan largely due to their own efforts to block the development of the property. Mondelli received the money to satisfy his debts and then chose to oppose the completion of the project. The result was that defendant was unable to realize the income he would have received under the ground lease. Rather than attempt to refinance the loan, defendant chose to expend his efforts at avoiding the transaction. Count 1 of the counterclaim is dismissed.

The third count of the counterclaim is a claim for breach of fiduciary duty. There is no basis for this claim because there is no fiduciary relationship between plaintiffs and defendants. Each party was represented by independent counsel. The defendants sought out and obtained the type of transaction they wanted. There is no evidence that defendants expressly reposed a special trust in plaintiffs nor is there any evidence that such a trust was implied. The relationship between JSRM and defendants is lender and borrower. Berkeley was defendants' tenant. Neither relationship creates a fiduciary relationship between the parties. Count 3 of the counterclaim is dismissed.

In count 4 defendants claim that plaintiffs were unjustly enriched because they borrowed money against the property which was used for purposes unrelated to the property. The evidence however is contrary to the assertion. The plaintiffs have incurred debt in their efforts to develop the property. The plaintiffs received rent from the tenants in the existing strip mall in an amount inadequate to cover the carrying costs for the property. The plaintiffs were not unjustly enriched at defendants' expense and count 4 of the counterclaim is dismissed.

Count 5 of the counterclaim alleges breach of contract. Defendants assert that plaintiffs breached their duties under the loan agreement and ground lease. As to the loan agreement, the evidence is clear that plaintiffs provided the funds to the bankruptcy trustee, thus satisfying its obligation to loan $650,000 to defendants.

29

29a

As to the ground lease, plaintiffs' obligation to pay rent under the lease beginning 180 days after all final and unappealable approvals were obtained from the township.  The defendants however within months of the execution of the lease repudiated it and attempted to overturn it.  Those efforts continue. Furthermore, as previously noted defendants have taken unreasonable steps which prevented plaintiffs from obtaining financing to complete the project.  The defendants' obstruction caused Berkeley to a position where payments under the lease were not possible.  Defendants cannot complain about a situation they caused.

The seventh count alleges that the transaction documents unconscionably favorable to plaintiffs at defendants' expenses and that plaintiffs stripped equity from the property at defendants' expense.  These claims mirror other allegations by the defendants.  The documents were prepared in accordance with the negotiations carried out by counsel for the parties.  Defendants bargained for and received the deal they wanted.  The plaintiffs after signing the documents spent substantial amounts of money in an effort to obtain approvals to permit the project to proceed.  There are no facts to support a claim of unconscionability and therefore, count 7 is dismissed.

Count 8 of the counterclaim alleges violation of the Consumer Fraud Act. That count was severed and transferred to the Law Division.

The claims of breach of contract are also included in defendants' landlord-tenant complaint. Count 1 of that complaint alleges failure to pay rent. As noted above, this claim cannot stand against the plaintiffs and is dismissed.

In their landlord-tenant complaint, defendants also seek possession of the property based upon the allegation that plaintiffs breached the lease. The claims are that Berkeley sublet the store in the existing strip mall it was entitled to use. The lease does not prevent sub-leasing and Berkeley is entitled to rents received from the sub-tenant. The complaint alleges that Berkeley borrowed money using the leasehold as collateral in violation of the lease. There is no prohibition against borrowing by the plaintiffs in the lease. The loan in question was obtained by JSRM. The defendants also allege that the lease was breached by failure to obtain a garden stand for defendants. The approved plans for the project include such a stand and the failure to proceed with the development is a result of defendants' conduct. Accordingly, count 2 of the landlord-tenant complaint is dismissed.

With regard to the third-party complaint, count one alleging personal liability for fraud has been addressed and this count is dismissed. The second count seeks to pierce the corporate veil of both JSRM and Berkeley based on the allegation that there is a unity of interest and ownership so that the separate personalities of plaintiffs no longer exist. The record does not support the claim that JSRM and Berkeley are not separate business entities.

31

31a

The record indicates that there are 3 members of Berkeley; William and Jack Silverman and Charles Boyle.  Jack Silverman is the principal owner of JSRM.  It is clear that each entity participated in separate aspects of the transaction.  JSRM agreed to broker a loan to the Mondellis and Berkeley agreed to the ground lease and to redevelop the property.  Mr. Ponczek when he was a member of Berkeley introduced Mondelli to Jack Silverman.  There is no evidence that Ponczek was a member of JSRM or represented it.  There is no blurring of ownership interest in this transaction.

Defendants also contend that the fact that Berkeley pledged its leasehold interest in the property as collateral for the money used by JSRM to fund the loan to Mondelli proves the abuse of the corporate identities.  That financial arrangement does not prove the lack of separate corporate identities.  There is no proof that Berkeley gave up or intended to give its interest in the ground lease to JSRM.

The record does not indicate that these entities have abused the corporate form or used it as a shield for tortuous conduct.  The second count of the third-party complaint is denied.

32

32a

## SUMMARY OF DECISION

Judgment is entered in favor of plaintiffs against the defendants as follows:

### Count 1:

Judgment in favor of JSRM to quiet title to the property and requiring defendants to discharge the *lis pendens*.

### Count 3:

Judgment in favor of plaintiffs for permanent injunctive relief.

### Counts 6 & 8:

Judgment in favor of plaintiff JSRM for deficiency under the note and for unjust enrichment in the amount of $1,153,726.42, plus interest, costs and legal fees.

### Count 7:

Judgment in favor of plaintiffs on the personal guaranties holding the defendants jointly and severally liable for the deficiency.

### Count 10:

Judgment in favor of plaintiffs for interference with prospective economic advantage and damages awarded in the amount of $706,913.24, plus costs and legal fees.

33

33a

**Count 12:**

Judgment for plaintiff Berkeley for punitive damages of $350,000.


**Counts 2, 4, 5, 9 & 11:**

Dismissed.


The defendants' counterclaim (counts 1 through 7); third-party complaint (counts 1 & 2) and landlord-tenant complaint (counts 1 & 2) are dismissed. Count 8 of the counterclaim alleging consumer fraud has been transferred to the Law Division.


Very truly yours,

JOHN F. MALONE, P.J. Ch.


JFM/pfk
encl.

34

34a

FISCHER PORTER & THOMAS, P.C.
180 Sylvan Avenue, 2nd Floor
Englewood Cliffs, NJ 07632
T: (201) 569-5959
F: (201) 871-4544
*Attorneys for Plaintiffs Jack Silverman
Realty & Mortgage Co., L.L.C.,
Berkeley Realty Partners 244, LLC.
William Silverman, Jack Silverman and
John Ponczek*

**FILED**

**JUL 3 0 2012**

**JOHN F. MALONE**
**J.S.C.**

| | |
|---|---|
| JACK SILVERMAN REALTY & MORTGAGE, CO., L.L.C. and BERKELEY REALTY PARTNERS 244, LLC | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION UNION COUNTY |
| Plaintiffs, | DOCKET NO.:   UNN-C-16-11 |
| vs. | -CIVIL ACTION- |
| VICTOR MONDELLI and ANA MONDELLI, and each of their heirs, devisees and personal representatives, and his/her/their or any of their successors in right, title and interest, | |
| Defendants. | |
| vs. | |
| WILLIAM SILVERMAN, JACK SILVERMAN, and JOHN PONCZEK. | |
| Third Party Defendants. | |
| ANNA MONDELLI and VICTOR MONDELLI, | |
| Plaintiffs, | DOCKET NO.   UNN-LT-1683-12 |
| vs. | |
| BERKELEY REALTY PARTNERS 244, LLC, | |
| Defendant. | JUDGMENT |

THIS MATTER having been brought before the Court by Plaintiffs Jack Silverman Realty & Mortgage Co., L.L.C. ("JSRM") and Berkeley Realty Partners 244, LLC ("Berkeley") (and collectively, "Plaintiffs") against Defendants Victor Mondelli and Anna Mondelli (collectively, "Defendants") as a Chancery action, and Defendants having brought a counterclaim against Plaintiffs and a third party complaint against William Silverman, Jack Silverman and John Ponczek (collectively, "Third Party Defendants"), and Defendants having brought a separate Landlord-Tenant action against Berkeley which was consolidated with Plaintiffs' Chancery action on March 12, 2012, and Plaintiff JSRM having brought separate actions for foreclosure against Defendants entitled *Jack Silverman Realty & Mortgage Co., L.L.C. v. Mondelli*, UNN-F-40504-09 and UNN-F-40517-09 regarding the two lots of real property known as Block 801 Lots 23 and 24 in the Township of Berkeley Heights, New Jersey (collectively, the "Property") and mortgages thereon which are at issue in this matter, and final judgments of foreclosure having been granted in favor of JSRM in said foreclosure actions, and said Property having been sold to JSRM at a Sheriff's sale and title having been conveyed to JSRM via Sheriff's Deed dated April 3, 2012, and a trial in this Chancery action and the related Landlord-Tenant action having been conducted before the Honorable John F. Malone, P.J.Ch. on March 21, March 22, March 23, April 30, May 1 and May 30, 2012 in which Plaintiffs and Third Party Defendants appeared and were represented by Fischer Porter & Thomas, P.C., Arthur "Scott" L. Porter, Jr., Esq. and Aaron E. Albert, Esq. and Defendants appeared and were represented by Kenneth Rosellini, Esq., and the Court having considered the testimony of witnesses, the exhibits admitted into evidence and the written submissions of counsel, and for good and just cause shown;

IT IS on this __30__ day of ___JULY___, 2012

ORDERED as follows:

1. Plaintiffs' Count I: Title to the Property having passed by Sheriff's Deed dated April 3, 2012 to Plaintiff JSRM, Plaintiff's claim to quiet title in the Property is granted, and clear and marketable title to the Property shall be and hereby is vested in Plaintiff JSRM;

2. Plaintiffs' Count II: The Court having found that Defendants willfully and deliberately failed to comply with the ground lease, and title to the Property having passed by Sheriff's Deed dated April 3, 2012 to Plaintiff JSRM, such that JSRM is the successor in interest to Defendants' interest as lessor under the ground lease, Plaintiff's claim for specific performance of the ground lease is granted and compensatory damages shall be and hereby are awarded against Defendants in favor of Plaintiff Berkeley as set forth below;

3. Plaintiffs' Count III: The Court having found that Defendants willfully and deliberately interfered with Plaintiffs' redevelopment of the Property under the ground lease, and the Court having granted preliminary injunctive relief enjoining Defendants from interfering with redevelopment of the Property either by refusing to execute documents or by threats, intimidation or physical or verbal abuse by the Court's order entered June 1, 2012, and the Court having determined that the claim is not moot despite title to the Property having passed to Plaintiff JSRM by Sheriff's Deed dated April 3, 2012 because Defendants' residence is next door to the Property, the preliminary injunction granted in favor of Plaintiffs against Defendants on June 1, 2011 is made permanent, and Defendants are hereby enjoined from all action and/or inaction that interferes with redevelopment of the Property, including without limitation using threats, intimidation, and other physical and verbal abuse in an attempt to frustrate redevelopment of the Property, and any and all interference with the surveying, engineering

3

37a

and/or construction on the subject property is strictly prohibited. Additionally, Defendants are prohibited from interfering with Plaintiffs' efforts to sell, transfer and/or convey the Property. Defendants are liable to Plaintiff Berkeley for the cost of the delays caused by Defendants' wrongful interference, and Plaintiff Berkeley is awarded compensatory damages as set forth below;

4. Plaintiffs' Count IV: Title to the Property having passed by Sheriff's Deed dated April 3, 2012 to Plaintiff JSRM, and Plaintiff JSRM having become the successor in interest to Defendants as Lessor under the ground lease, and the Court having found that Defendants' conduct was in bad faith, any and all obligations of Plaintiffs to Defendants under the ground lease shall be and hereby are nullified, void and of no effect;

5. Plaintiffs' Count V: The Court having granted the turnover of escrowed rent and the right to collect future rent from Domino's Pizza, a subtenant at the Property, to Plaintiffs by the Court's orders entered June 1, 2011, June 10, 2011 and August 4, 2011, and title to the Property has passed by Sheriff's Deed dated April 3, 2012 to Plaintiff JSRM, and JSRM having succeeded to Defendants' rights as owner and lessor to collect future rents at the Property, Plaintiffs' claims in their Count V are therefore dismissed as moot and Defendants shall not have a right to be credited for any past rent actually collected by Plaintiffs;

6. Plaintiffs' Count VI: Defendant Victor Mondelli having defaulted on his obligations under the promissory note dated May 16, 2007, and the Court having granted judgments of foreclosure on the Properties, and the Properties having been sold at Sheriff's sale on March 21, 2012 to JSRM for $100.00, and the Sheriff having returned a notice of deficiency in the amount of $1,153,726.42, and Plaintiff JSRM being entitled to additional interest at the per

4

38a

diem interest rate of $302.7397 from May 21, 2012 to the time of payment, plus reasonable attorneys' fees and costs incurred in enforcing the promissory note and personal guaranties and collecting amounts due thereunder, Plaintiff JSRM is hereby awarded compensatory damages against Defendants as set forth below; *in paragraph 23a*

7.   Plaintiff's Count VII: Defendants having defaulted on their obligations under the promissory note and personal guaranties dated May 16, 2007, and the Court having granted judgments of foreclosure on the Properties, and the Properties having been sold at Sheriff's sale on March 21, 2012 to JSRM for $100.00, and the Sheriff having returned a notice of deficiency in the amount of $1,153,726.42, and Plaintiff JSRM being entitled to additional interest at the per diem interest rate of $302.7397 from May 21, 2012 to the time of payment, plus reasonable attorneys' fees and costs incurred in enforcing the promissory note and personal guaranties and collecting amounts due thereunder, Plaintiff JSRM is hereby awarded compensatory damages against Defendants as set forth below; *in paragraph 23a*

8.   Plaintiffs' Count VIII: Defendants having received the benefits of Plaintiff JSRM's payment of loan funds on behalf of Defendant Victor Mondelli enabling him to pay his creditors and resolve his bankruptcy, ~~and Defendants having further benefited by Plaintiff Berkeley's expenditures in fulfillment of its obligations under the ground lease and the procurement of approvals for development at the Property~~, and Plaintiffs having expected and been entitled to be compensated for such benefits to Defendants, damages are hereby awarded to Plaintiffs against Defendants in the amounts set forth below; *in paragraph 23a*

9.   Plaintiffs' Count IX: Plaintiff Berkeley having acted in good faith to fulfill its obligations under the ground lease, and Defendants having acted in bad faith regarding their

5

39a

obligations under the ground lease and intentionally and wrongfully prevented Plaintiff Berkeley from performing the redevelopment of the Property as contemplated by the ground lease, compensatory damages are hereby awarded to Plaintiff Berkeley against Defendants in the amounts set forth below;

10.     Plaintiffs' Count X: Defendants having acted with malice, in bad faith and without justification to intentionally interfere with Plaintiff Berkeley's rights to construct retail space at the Property and lease it to tenants, and Plaintiff Berkeley as a result having been deprived of expected profits and the opportunity to amortize its costs over the term of the 99-year ground lease, Plaintiff Berkeley is hereby awarded compensatory and punitive damages against Defendants as set forth below; *in the amount of $706,913.24 plus costs + attorneys fees as set forth in paragraphs 23 c,d,e,f.*

11.     Plaintiffs' Count XI: Defendants having entered into the loan agreements and ground lease with Plaintiffs with the intention of breaching said agreements, misrepresenting their intentions to Plaintiffs, and Plaintiffs, in entering into the agreements and expending substantial money and effort to fulfill their obligations thereunder, having relied upon Defendants' misrepresentations to Plaintiffs' detriment, Plaintiffs are hereby awarded compensatory and punitive damages against Defendants in the amounts set forth below;

12.     Defendants' Count I: Title to the Property having passed by Sheriff's Deed dated April 3, 2012 to Plaintiff JSRM, and the Defendants having defaulted on their obligations to Plaintiff JSRM under the promissory note and personal guaranties, and Plaintiff Berkeley being excused from any obligations to Defendants under the ground lease as a result of Defendants' inequitable and wrongful conduct in intentionally preventing Plaintiff Berkeley from

redeveloping the Property, Defendants' claim to quiet title to the Property in Defendants shall be and hereby is dismissed with prejudice;

13.    Defendants' Count II: Plaintiffs having acted in good faith to perform their obligations under the loan agreements and ground lease, and Defendants having defaulted under the promissory note and personal guaranties and acted in bad faith, intentionally and with malice to prevent Plaintiffs from profiting from the loan and redeveloping the Property under the ground lease, Defendants' claim for breach of the implied covenant of good faith and fair dealing against Plaintiffs shall be and hereby is dismissed with prejudice;

14.    Defendants' Count III: The Court having found that there is no fiduciary relationship between Plaintiffs and Defendants, and that Plaintiffs acted in good faith to perform their obligations under the loan agreements and ground lease, Defendants' claim for breach of fiduciary duty against Plaintiffs shall be and hereby is dismissed with prejudice;

15.    Defendants' Count IV: The Court having found that Plaintiffs acted in good faith under the loan agreements and ground lease, and Defendants acted in bad faith, with malice and without justification to prevent Plaintiffs from redeveloping the Property under the ground lease, and Plaintiffs were not unjustly enriched but rather suffered damages as a result of Defendants' wrongful conduct, Defendants' claim for unjust enrichment against Plaintiffs shall be and hereby is dismissed with prejudice;

16.    Defendants' Count V: The Court having found that Plaintiffs acted in good faith to perform their obligations under the loan agreements and ground lease, and Defendants acted in bad faith, with malice and without justification to prevent Plaintiffs from redeveloping the

Property under the ground lease, Defendants' claim for breach of contract against Plaintiffs shall be and hereby is dismissed with prejudice;

17.     Defendants' Count VI: The Court having found that Plaintiffs made no material misrepresentations to Defendants, and Defendants could not have reasonably relied upon any such material misrepresentations in entering into the loan agreements and ground lease, Defendants' claims for common law fraud against Plaintiffs shall be and hereby are dismissed with prejudice;

18.     Defendants' Count VII: The Court having found that the loan agreements and ground lease were not unconscionable, that Defendants would have received adequate consideration under such agreements absent their intentional interference with Plaintiffs' performance, Defendants' claim for unconscionability shall be and hereby is dismissed with prejudice;

19.     Defendants'-Third Party Plaintiffs' Count I: The Court having found that Plaintiffs made no fraudulent misrepresentations to Defendants, and that Defendants-Third Party Plaintiffs failed to demonstrate that Third Party Defendants personally made any fraudulent misrepresentations to Defendants, and that Defendants-Third Party Plaintiffs could not reasonably have relied upon any such material misrepresentations, Defendants'-Third Party Plaintiffs' claim for personal liability for fraud against Third Party Defendants shall be and hereby is dismissed with prejudice;

20.     Defendants'-Third Party Plaintiffs' Count II: This Court having found that Plaintiffs committed no fraud and that Plaintiffs were not alter egos of the Third Party Defendants and Plaintiffs' business identities were not subsumed, Defendants'-Third Party

8

42a

Plaintiffs' claim against Third Party Defendants seeking to pierce the corporate veil shall be and hereby are dismissed with prejudice in their entirety;

21. Landlord-Tenant Count I: The Court having found that Plaintiff Berkeley's obligation to pay rent under the ground lease was excused by the Mondellis' inequitable conduct intentionally preventing Berkeley from redeveloping the Property, the Mondellis' claim for possession for non-payment of rent shall be and hereby is dismissed with prejudice;

22. Landlord-Tenant Count II: The Court having found that Plaintiff Berkeley did not breach any covenants under the ground lease, and that the Mondellis acted inequitably, with malice and without justification to prevent Berkeley from performing its obligations and receiving benefits under the ground lease, the Mondellis' claim for possession for breach of covenants of the lease shall be and hereby is dismissed with prejudice;

23. The Court having found that Defendants are liable to Plaintiffs for compensatory damages, such compensatory damages shall be and hereby are awarded to Plaintiffs against Defendants in the following amounts:

a. For the deficiency under the promissory note and personal guaranties, compensatory damages are hereby awarded to Plaintiff JSRM in the amount of $1,153,726.42 plus the per diem interest rate of $302.7397 from May 21, 2012 to the time of payment, including per diem interest from May 21, 2012 to June 15, 2012, a period of 25 days, totaling $7,568.49, plus an additional $302.7397 per day for each day from June 16, 2012 to the time of payment;

b.  For the "soft costs" of planning and gaining approvals for the project, which
Plaintiff Berkeley was deprived of the opportunity to amortize and recover over
the 99-year term of the ground lease, compensatory damages are awarded to
Plaintiff Berkeley in the amount of $299,714.73;

c.  For the carrying costs of the project during the extended period in which the
Mondellis prevented Plaintiffs from obtaining construction funding,
compensatory damages are awarded to Plaintiff Berkeley in the amount of
$560,214.49;

d.  For closing costs for the NY Urban loan, compensatory damages are awarded to
Plaintiff JSRM in the amount of $49,819.74;

e.  For origination costs and renewal fees to City National Bank, compensatory
damages are awarded to Plaintiff JSRM in the amount of $8,500.00;

f.  For attorneys' fees incurred in order to enforce the loan agreements and ground
lease and collect amounts due under the promissory note and personal guaranties,
damages consisting of $88,379.01 plus legal fees and costs incurred by Plaintiffs
with Fischer Porter & Thomas, P.C., to be determined by this Court and allocated
among Plaintiffs JSRM and Berkeley after submission of a certification of legal
services within ten days and a subsequent hearing.

24.    The Court having found that the Mondellis engaged in an extended campaign of
willful obstruction and interference with JSRM's and Berkeley's rights under the loan
agreements and ground lease, punitive damages shall be and hereby are awarded against

10

44a

Defendants in favor of Plaintiffs in the amount of $~~500,000.00 to Plaintiff JSRM and~~

$ 350,000.00

~~$500,000.00~~ to Plaintiff Berkeley.

      25.    The lis pendens recorded against the Property by the Mondellis on or about May 25, 2012 shall be and hereby is cancelled.

      26.    A copy of this Judgment shall be served on counsel for all parties within __7__ days of receipt by any party's counsel.

_____
Hon. John F. Malone, P.J.Ch.

11