**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VICTOR MONDELLI, | : Civil Action No. 14-cv-6196 (KSH)(CLW) |
| Plaintiff, | : |
| v. | : |
| BERKELEY HEIGHTS POLICE DEPARTMENT, et als., | : |
| Defendants. | : |

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS,
FISCHER, PORTER & THOMAS, P.C. AND ARTHUR L. PORTER, JR., ESQ.**

---

**GRAHAM CURTIN**
A Professional Association
4 Headquarters Plaza; P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendants,
Fischer, Porter & Thomas, P.C. and
Arthur L. Porter, Jr., Esq.

Christopher J. Carey, Esq.
    *Of Counsel*

David M. Blackwell, Esq.
Megan Halverson Trexler, Esq.
    *On the brief*

2225608.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 4

LEGAL ARGUMENT ......................................................................................... 12

    I.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM
           UPON WHICH RELIEF CAN BE GRANTED AND, THEREFORE,
           SHOULD BE DISMISSED AS AGAINST FISCHER,
           PORTER & THOMAS, P.C. AND ARTHUR L. PORTER, JR. .......................... 12

    II.    THE ATTORNEY DEFENDANTS CANNOT BE LIABLE
           PURSUANT TO SECTION 1983 ............................................................... 14

    III.   PLAINTIFF'S STATE AND COMMON LAW CLAIMS
           SIMILARLY FAIL AS A MATTER OF LAW AND SHOULD
           BE DISMISSED .................................................................................... 19

          A.    Plaintiff's Claim Under the Civil Rights Act Should Be Dismissed .......... 19

          B.    Plaintiff's Claim for Intentional Infliction of Emotional
               Distress Fails as a Matter of Law ............................................................. 20

    IV.   THE COMPLAINT IS BARRED BY NEW JERSEY'S ENTIRE
           CONTROVERSY DOCTRINE ................................................................... 22

CONCLUSION ................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                           **Page**

<u>6th Camden Corp. v. Evesham Tp., Burlington County</u>, 420 F.Supp. 709 (D.N.J. 1976) ........... 17

<u>Agusta v. Paramount Aviation Corp.</u>, 528 U.S. 878 (1999) ........................................................ 22

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)......................................................................... 12

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)................................................................ 13

<u>Bernardsville Quarry v. Borough of Bernardsville</u>, 929 F.2d 927, 930 (3d Cir. 1991),
    cert. denied, 502 U.S. 861 (1991) ................................................................................. 22, 24, 25

<u>Bradshaw v. Township of Middletown</u>, 296 F. Supp. 2d 526, 537 (D. N.J. 2003),
    aff'd, 145 Fed. Appx. 763 (3d Cir. 2005) ............................................................................... 14

<u>Buckley v. Trenton Sav. Fund Soc'y</u>, 544 A.2d 857 (N.J. 1988) ................................................. 20

<u>Cogdell v. Hosp. Ctr. at Orange</u>, 116 N.J. 7, 560 A.2d 1169 (1989)........................................... 23

<u>Cottrell v. Zagami, LLC</u>, 218 N.J. 217 (2014) ........................................................................... 20

<u>Crispin v. Volkswagenwerk, A.G.</u>, 96 N.J. 336, 343-44, 476 A.2d 250 (1984).......................... 23

<u>Dennis v. Sparks</u>, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)................................. 16

<u>DiTrolio v. Antiles</u>, 142 N.J. 253, 662 A.2d 494, 502 (N.J. 1995).............................................. 26

<u>Dowdell v. Univ. of Med. And Dentistry of N.J.</u>, 94 F. Supp. 2d 527, 534 (D.N.J. 2000)..... 23, 25

<u>Ellison v. Garbarino</u>, 48 F.3d 192 (6th Cir. 1995)..................................................................... 16

<u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005)................................................................. 12

<u>Felicioni v. Administrative Office of the Courts</u>, 404 N.J. Super. 382, 400 (App. Div. 2008).... 19

<u>Fields v. Thompson Printing Co.</u>, 363 F.3d 259, 265 (3d Cir. 2004) ........................................... 26

<u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ............... 16

<u>Glenside West Corp. v. Exxon Co. USA</u>, 761 F. Supp. 1100 (D. N.J. 1994).............................. 20

<u>Great Western Mining & Mineral Co. v. ADR Options, Inc.</u>, 882 F. Supp. 2d 749
    (D.N.J. 2012)........................................................................................................................ 26

ii

**TABLE OF AUTHORITIES (cont'd.)**

<u>Cases</u> <u>Page</u>

<u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628  (3d Cir. 1995) ............................................ 15, 16, 18

<u>Hauptmann v. Wilentz</u>, 570 F.Supp. 351 (D.N.J. 1983), <u>aff'd</u>, 770 F.2d 1070,
     <u>cert</u> <u>denied</u>, 106 S.Ct. 887, 474 U.S. 1103, 88 L.Ed.2d 922 (1986) ......................... 17

<u>Heir v. Del. River Port Auth.</u>, 218 F. Supp. 2d 627 (D.N.J. 2002)........................................ 23, 24

<u>Hernandez v. Region Nine Housing Corp.</u>, 146 N.J. 645, 661, 684 A.2d 1385 (1996) .............. 26

<u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).. 16

<u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009)........................................................................ 15

<u>Kanter v. Scharf</u>, 2013 U.S. Dist. LEXIS 119809, 17 (D.N.J. Aug. 23, 2013) ........................... 22

<u>Kozyra v. Allen</u>, 973 F.2d 1110, 1111 (3d Cir. 1992), <u>reh'g denied</u>, 1992 U.S. App.
     LEXIS 22910 (3d Cir. Sept. 18, 1992) .............................................................................. 23, 26

<u>Lee-Patterson v. New Jersey Transit Bus Operations, Inc.</u>, 957 F. Supp. 1391, 1398
     (D. N.J. 1997)............................................................................................................................ 14

<u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1142 (3d Cir. 1995) ................................................ 15

<u>Mauro v. Beil</u>, 213 Fed. Appx. 131, 132 (3d Cir. 2007)................................................................ 15

<u>McDaniel v. N.J. State Police</u>, 2013 U.S. Dist. LEXIS 23481, 5 (D.N.J. Feb. 20, 2013)............ 18

<u>McKeesport Hospital v. Accreditation Council</u>, 24 F.3d 519 (3rd Cir. 1994) ...................... 15, 16

<u>Olds v. Donnelly</u>, 150 N.J. 424, 431, 696 A.2d 633 (1997) ........................................................ 23

<u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132, 135 (3d Cir. 1999), <u>cert. denied</u>
     <u>sub. nom.</u>.......................................................................................................................... 22, 23, 24

<u>Perez v. Zagami, LLC</u>, 218 N.J. 202 (2014).......................................................................... 19, 20

<u>Polk County v. Dobson</u>, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ........................... 17

<u>Ramirez v. United States</u>, 998 F. Supp. 425 (D.N.J. 1998) ....................................................... 20

<u>Rotolo v. Borough of Charleroi</u>, 532 F.2d 920  (3rd Cir. 1976).................................................. 17

iii

## TABLE OF AUTHORITIES (cont'd.)

**Cases**                                                                                          **Page**

Rycoline Prods. v. C & W Unlimited, 109 F.3d 883 (3d Cir. 1997) .............................. 22

Santiago v. Warminster Twp., 629 F.2d 121, 128 (3d Cir. 2010) .......................... 12, 13

Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)............................... 12, 13

Sutton v. Sutton, 71 F. Supp. 2d 383, 390 (D.N.J. 1999), aff'd, 216 F.3d 1077
    (3d Cir. 2000)........................................................................................ 24, 25

Total Packaging Corp. v. Tenneco Packaging Corp., 2004 U.S. Dist. LEXIS 6199,
    at *4 n.3, 11-12 (D.N.J. Apr. 2, 2004) ....................................................... 22, 24

Washington v. Twp. of Hillside City Council, 2008 U.S. Dist. LEXIS 51229, 35
    (D.N.J. June 30, 2008) ............................................................................. 17

West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) .................................. 16

Williams v. Dark, 844 F.Supp. 210 (E.D.Pa. 1993), aff'd, 19 F.3d 645 (3rd Cir. 1994) ............. 17


**Statutes**

28 U.S.C. § 1738........................................................................................... 23

42 U.S.C. § 1983........................................................................................... 12, 13

N.J.S.A. 10:6-2(c) ........................................................................................ 19


**Rules**

Fed.R.Civ.P. 12(b)(6)..................................................................................... 12, 13, 14, 21

R. 4:9-1 ....................................................................................................... 27

2225608.1

## PRELIMINARY STATEMENT

For the past seven years, Plaintiff, Victor Mondelli has been embroiled in multiple litigations with Defendants, Jack Silverman Realty & Mortgage Company, LLC ("JSRM") and Berkeley Realty Partners 244, LLC ("Berkeley"), stemming from an arrangement aimed to save Mondelli's three lots of real property from sale through the voluntary bankruptcy proceeding filed by Mondelli. The arrangement consisted of a mortgage loan from JSRM to the Mondellis secured by two of the properties and a ground lease of a portion of one property to Berkeley. Almost immediately after the transaction closed, Mondelli sought to undo it through the Bankruptcy Court, then the District Court and ultimately the Third Circuit Court of Appeals. All of Mondelli's attempts were rejected by the Courts, and when Mondelli was unable to pay the mortgage on two of the lots, JSRM and Berkeley foreclosed on the mortgage held on two of the lots then owned by Victor Mondelli and his mother, Anna Mondelli. The Mondellis failed to answer the complaint in the foreclosure action and a default judgment of foreclosure was eventually entered, resulting in the property being sold at sheriff's sale. JSRM and Berkeley also brought an action filed in the Superior Court of New Jersey, Union County, Chancery Division, General Equity Part for compensatory and punitive damages (the "General Equity Action"), resulting in a judgment of over $2.2 million in favor of JSRM and Berkeley and against the Mondellis.

On October 18, 2012, JSRM and Berkeley filed another action alleging that the Mondellis conspired with other Defendants named therein to fraudulently convey the third lot owned by the Mondellis to Victor Mondelli's cousin, Defendant Heidi Santore, for a purchase price well under fair market value so as to avoid execution by the Plaintiffs in connection with the judgment awarded in the General Equity Action. Mondelli failed to answer the complaint.

Also included among the Defendants in that case was the Mondellis' attorney in the General Equity Action and in Victor Mondelli's 2004 bankruptcy, Kenneth Rosellini, Esq. JSRM and Berkeley allege that Rosellini assisted in the transfer of the property despite, and perhaps because of, his knowledge of the $2.2 million judgment held by Plaintiffs.

In response, Rosellini filed a third-party complaint against, among others, Arthur L. Porter, Jr., Esq., the attorneys for Plaintiffs in the fraudulent conveyance and the other litigation with the Mondellis (hereinafter collectively referred to as the "Mondelli Litigation"). In his third-party complaint, Rosellini complained that Mr. Porter assisted Plaintiffs and the Chapter 7 Bankruptcy Trustee in Victor Mondelli's 2004 bankruptcy to commit fraud upon the Court in the General Equity Action. By Order and Opinion entered on December 9, 2013, the third-party complaint was dismissed for failure to state a claim because "fraud upon the court" is not a separate cause of action in New Jersey and, furthermore, permitting such an action would "run afoul of the policies embodied in the entire controversy doctrine."

In the instant litigation, Mondelli, represented once again by Mr. Rosellini, now seeks to invoke the United States Constitution to pursue yet another claim against JSRM and Berkeley, also naming as Defendants Berkeley Heights Police Department; Chief of Police, Michael P. Mathis; Detective Michael Delia; and Zoning Officer Thomas Bocko (sometimes collectively referred to herein as the "Berkeley Heights Defendants") as well as Jack Silverman, William Silverman, Robert Dowling and Jack Dowling. Mr. Porter and his firm, Fischer, Porter & Thomas, P.C. (sometimes collectively herein referred to as the "Attorney Defendants") have again been named as defendants in this action as well. Plaintiff alleges that the Silvermans, the Dowlings and the Attorney Defendants conspired with the Berkeley Heights Defendants to deprive Mondelli of his rights as guaranteed by the First, Fourth, Fifth and Fourteenth

2

Amendments as well as the due process and equal protection clauses of the United State Constitution by removing certain items from a garden stand Mondelli has operated on one of the properties upon which JSRM and Berkeley had foreclosed and purchased at sheriff's sale without obtaining a "writ, warrant or order" prior to doing so.  Mondelli alleges that the Attorney Defendants participated in this conspiracy by providing legal advice to the Silvermans.  Mondelli also attempts to allege violations of the New Jersey Civil Rights Act (the "Civil Rights Act") and a claim for intentional infliction of emotional distress stemming from this same conduct.

The meritless claims against the Attorney Defendants should be dismissed for numerous reasons.  First, Mondelli's claim under 42 U.S.C. § 1983 fails as a matter of law because the Attorney Defendants are not state actors.  Mondelli claims that the Attorney Defendants participated in the alleged conspiracy with the Berkeley Heights Defendants; however, his allegations consist solely of bare, conclusory statements that fall woefully short of the specificity required to properly allege a conspiracy claim against private actors under Section 1983.  Mondelli's claim under the Civil Rights Act similarly fails because a private cause of action under this statute requires wrongful conduct by a state actor, and the Attorney Defendants are not state actors.  Further, Plaintiff has failed to state a claim for intentional infliction of emotional distress because the complained of conduct, legal advice provided by the Attorney Defendants to their clients, does not arise to the level of "outrageous conduct" necessary to allege this claim.  Finally, despite numerous opportunities in the litigation with JSRM, Berkeley, those entities' principals and the Attorney Defendants, Mondelli has failed to bring these claims in the previous litigations.  These claims are therefore are barred by the entire controversy doctrine.  Accordingly, this motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) should be granted and the Complaint as against the Attorney Defendants should be dismissed.

3

## STATEMENT OF THE FACTS

As set forth above, this is only the most recent litigation among Mondelli and the Defendants herein beginning in or around 2007. The factual allegations contained in Mondelli's Complaint fail to set forth a claim upon which relief can be granted as against Mr. Porter and his firm. Mr. Porter and his firm were attorneys for Defendants Jack Silverman, William Silverman, JSRM and Berkeley (sometimes collectively referred to herein as the "Silverman Defendants"). The conclusory allegations that these Defendants acted with the legal advice of the Attorney Defendants are insufficient to create a conspiracy claim under Section 1983 and similarly fail to state a claim under the Civil Rights Act or for intentional infliction of emotional distress. Additionally, the numerous (and generally unnecessary) lawsuits summarily referenced in Mondelli's Complaint and fully detailed below demonstrate that Mondelli's most recent Complaint is barred by the entire controversy doctrine.

### A.    The Allegations in the Instant Litigation Filed by Mondelli

According to the five-count Complaint filed by Plaintiff, Victor Mondelli, has owned and operated a self-serve garden stand on a property he previously owned with his mother located at Block 80, Lot 24, more commonly known as 258 Springfield Avenue in Berkeley Heights, New Jersey since some time in the early 1980s. (Pl.'s Compl., ECF No. 1, ¶ 19). Since in or around 1999, Mondelli has operated the garden stand as "either an Owner of the property, a Tenant of the Property, or a Tenant at Sufferance, but always legal (sic) in possession of the property." (Id. at ¶ 20). At one time, Mondelli and his mother were the owners of this property along with two other contiguous lots: 258 Springfield Avenue, a three store strip mall (the "Subject Property"); 240 Springfield Avenue, a vacant lot (the "Vacant Lot"); and 260-264 Springfield Avenue, a residential property (the "Residential Property"). (Id. at ¶ 22).

On February 18, 2004, Mondelli filed a voluntary petition for Chapter 13 bankruptcy protection. (Id. at ¶ 26).  At that time, Mondelli was represented by counsel, but he terminated his counsel when the creditors objected to the confirmation of his initial Chapter 13 plan. (Id. at ¶ 27).  The bankruptcy was converted to a Chapter 7, reconverted to Chapter 13 and ultimately converted to a Chapter 7 and the trustee reinstated in or around February 2007. (Id. at ¶¶ 31, 34). In or around February 2005, Mondelli retained new counsel. (Id. at ¶ 31).

In May 2007, there as an offer to purchase the Subject Property from the Mondellis for $1.3 million made through the bankruptcy auction process. (Id. at ¶ 36).  Mondelli was unwilling to sell the Subject Property because he wanted to continue operating his garden stand. (Id. at ¶¶ 37-38).  Instead, Mondelli sought to refinance the property, but if the refinancing failed, the Subject Property would be sold to the winning bidder from the auction. (Id. at ¶ 39).

Mondelli entered into an agreement with JSRM and Berkeley consisting of a mortgage loan for $650,000 at 13% interest and additional fees due in 18 months, which loan was contingent upon a 99-year ground lease to Berkeley wherein payments would commence 180 days after unappealable approvals were obtained from the municipality to develop the properties. (Id. at ¶¶ 40-44).  The mortgage loan, held by JSRM, was secured by the Subject Property and the Vacant Lot as well as personal guarantees. (Id. at ¶ 42).  The Mondellis subordinated their interest in the property for purposes of construction financing on behalf of Berkeley. (Id. at ¶ 43).

The transaction between Mondelli, JSRM and Berkeley closed in May 2007. (Id. at ¶ 46). JSRM immediately assigned the mortgage to NY Urban, another entity which financed the mortgage loan. (Id. at ¶ 47).  Shortly thereafter, JSRM and Berkeley sought a subordination agreement from Mondelli to allow the entities to obtain construction financing. (Id. at ¶ 49). Mondelli refused to sign the proposed agreement.  (Id. at ¶ 50).  Instead, Mondelli sought to

2225608.1

terminate the ground-lease and mortgage by motion in the bankruptcy court and objected to the alleged abandonment of the Subject Property and Vacant Lot by the Trustee. (Id. at ¶ 51). JSRM and Berkeley filed a motion to enforce prior orders and the ground-lease and mortgage. (Id.).

In or around March 2012, JSRM obtained title to the Subject Property through Sheriff's Sale in Union County, and by Order and Opinion dated July 30, 2012, JSRM and Berkeley obtained a judgment against Mondelli for money damages. (Id. at ¶¶ 53-56). According to the Complaint, the July 30, 2012 Order and Opinion did not address Mondelli's tenancy in the garden stand, in which Mondelli had a life-estate. (Id. at ¶¶ 56-62).

On October 4, 2012, counsel for Mondelli, Mr. Rosellini, and the Silverman Defendants, Mr. Porter, took part in a telephone conference with the Union County Chancery Court. (Id. at ¶ 75). At that time, Jack Silverman, William Silverman, JSRM and Berkeley advised the Court that Mondelli was interfering with their rights by loading firewood onto the Subject Property. (Id. at ¶ 76). The Court directed the Silverman Defendants to file an Order to Show Cause for the relief they were seeking. (Id. at ¶ 79). Mondelli alleges in his Complaint in this action that the Silverman Defendants instead directed their agents, Robert Dowling and Jack Dowling to remove the firewood and other equipment and memorabilia stored by Mondelli from the Subject Property. (Id. at ¶ 80). Mondelli further alleges that the Silverman Defendants directed the Dowlings to remove these items "on legal advice of Arthur Porter, Jr. and Fischer, Porter & Thomas, P.C." (Id.). Thereafter, Plaintiff claims that the Silverman Defendants, through the Dowlings, represented to the authorities in Berkeley Heights that Mondelli had abandoned the Subject Property. (Id. at ¶ 83). Once again, Mondelli alleges that this action was taken "on legal advice of Arthur Porter, Jr. and Fischer, Porter & Thomas, P.C." (Id.).

2225608.1

After Mondelli's property was removed from the Subject Property, Mondelli contacted the Berkeley Heights Police Department, Chief of Police Michael P. Mathis, Detective Michael Delia and Zoning Officer Thomas Bokco to inform them of the alleged "illegal actions" taken by the Silverman Defendants. (Id. at ¶ 86). Mondelli further alleges that Detective Delia advised Mondelli "that if he stepped anywhere near the Garden Stand he would be arrested for trespass." (Id. at ¶ 87). Zoning Officer Bucko informed Mondelli that he was approving permits for the Dowlings to use the garden stand to sell Christmas trees for the Christmas 2012 season. (Id. at ¶ 90).

According to Mondelli, this conduct violated his rights as guaranteed by the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution as well as his due process and equal protection rights. Mondelli also seeks relief under the New Jersey Civil Rights Act and for intentional infliction of emotional distress.

**B.**   **The Other Litigation Among these Parties**

**a.**   **The General Equity Action**

As referenced in the Complaint in the instant litigation, on February 3, 2011, JSRM and Berkeley filed a twelve-count complaint with an order to show cause in the New Jersey Superior Court, Chancery Division, General Equity Part (hereinafter the "General Equity Action"). (Declaration of David M. Blackwell, Esq. dated January 22, 2015 ["Blackwell Decl."], Ex. A). Therein, Plaintiffs sought to quiet title to the Subject Property and the Vacant Lot, to enjoin the Mondellis from interfering with or obstructing redevelopment of the property as well as for the turnover of moneys due them under the loan and interference with prospective economic advantage. The Mondellis opposed the application and filed a cross-motion to dismiss foreclosure actions pending with respect to the property. In opposing the order to show cause,

the Mondellis raised issues of Victor Mondelli's mental capacity, the purported unconscionability of the mortgages and ground lease on the property and Mondelli's right of redemption. The Chancery Court granted the order to show cause, rejected Mondellis' contentions and denied the cross-motion. (Id. at p. 1-2).

The Mondellis thereafter filed an answer and counterclaim, as well as a third-party complaint, against William Silverman, Jack Silverman and John Ponczek, the principals of Berkeley. The Mondellis claimed that Plaintiffs breached their obligations under the loan documents failing to pay the Mondellis any of the money due them and failing to restructure the 18-month mortgage loan as promised. In their counterclaim, in addition to seeking to quiet title, the Mondellis raised claims, among others, of breach of contract and fiduciary duty, fraud and common law fraud, unconscionability and unjust enrichment.

The General Equity Action was consolidated with a lawsuit commenced by the Mondellis on February 22, 2012 in the Special Civil Part under a landlord-tenant docket. (Id. at p. 2-3). The Third Party Complaint filed by the Mondellis against JSRM, Berkeley, Mssrs. Silverman and John Ponczek in the General Equity Action for violations of the Consumer Fraud Act was severed and transferred to the Law Division. (See Blackwell Decl., Ex. B).

The General Equity Action proceeded to trial before Judge Malone on those counts remaining after the sheriff's sale of the property.[1] After the trial, by Order entered on July 30, 2012, the Court awarded judgment in favor of JSRM and Berkeley on the following claims: quieting title, enjoining the Mondellis from interfering with the development of the property, deficiency under the note and personal guaranties, interference with prospective economic

---

[1] Of the twelve counts, those seeking to quiet title, compel specific performance, void the ground lease and transfer title and turnover rent (counts one, two, four and five) were addressed by the fact that the property was sold to JSRM and Berkeley at sheriff sale on March 21, 2012. (Blackwell Decl., Ex. A, pp. 9-10).

8

advantage and punitive damages. (See Blackwell Decl., Ex. A, p. 33; Ex. C, "Judgment").  The Court also resolved the issues remaining with respect to the Mondellis' counterclaim and third party complaint, dismissing all claims. (Id. at p. 34).

In the 34-page letter decision after the trial on the General Equity Action, the Court found that the Mondellis entered into the ground lease and mortgages freely, voluntarily and with the advice of counsel.[2]  Further, the Court found, consistent with the expert testimony on behalf of JSRM and Berkeley, that Mondelli's claim that he lacked the mental capacity to enter into the transaction as a result of his alleged 2004 diagnosis with paranoid schizophrenia "would not mean that Mr. Mondelli was unable to understand or consent to the transaction." (Id. at p. 11).

As to Mondelli's claims that he entered the mortgages and ground lease because he was induced to do so by the Silverman Defendants' "rosy scenario" and promise that they would provide a long-term mortgage loan, the Court found that the "facts as established at trial do not support the defendants' claims."  Specifically, the Court found that (1) the general outline and elements of the transaction were originated by Mondelli; (2) Mondelli was represented by Herbert Levenson, Esq., a competent advisor, in every aspect of the transaction; and (3) there was no evidence of an agreement by JSRM or Berkeley to provide long-term financing to replace the 18-month $650,000 loan Mondelli used to pay his creditors in the Bankruptcy.

The Court further found that the sheriff's return of execution after the sale indicated a deficiency of $1,153,726.42, with interest running at the rate of $302.7397 per day pursuant to the final judgment of foreclosure. The Court therefore awarded JSRM and Berkeley damages in

---

[2] Judge Malone also detailed Mondelli's numerous attempts to undo the transaction through the Bankruptcy, Court, the District Court and the Third Circuit Court of Appeals. (Id. at p. 6-7).  All of these attempts were rejected by the Courts. (Id. at p. 7).  Mondelli and his mother later filed various actions and motions to postpone the sheriff's sale of the properties, which was originally scheduled for February 1, 2012.  These filings included, inter alia, a voluntary bankruptcy petition by Anna Mondelli, another bankruptcy petition filed by Mondelli and an order to show cause to extend the right of redemption. (Id. at pp. 8-9).

the amount of the deficiency, plus the per diem interest from May 21, 2012 to the time of payment, plus counsel fees and costs. The Mondellis objected that the property was sold below fair market value; however, the Court found that the Mondellis offered no evidence to establish that value at either the motion to set aside sale or at trial. Furthermore, the Mondellis did not seek a fair market value hearing pursuant to R. 4:65-5. (Id. at pp. 13-14).

The Court also dismissed the Mondellis claims for fraud, finding that there was no proof of the alleged misrepresentations by Plaintiffs. The Court found that the agreement, as negotiated by the Mondellis with the assistance of counsel, stated the obligation of JSRM and Berkeley under the ground lease and that the rental income would be directly related to the square footage of the developed retail space. The risk that the project would not be approved at the benchmark of 30,000 square feet was known to all parties and provided for in the agreement. (Id. at p.23). The Court further found that there was no evidence that JSRM and Berkeley had represented that they would renegotiate the 18-month $650,000 loan. The Court also found, contrary to the Mondellis' claims, that JSRM and Berkeley sought financing in their efforts to develop the property, consistent with the requirements for subordination. (Id. at p. 29). As a result, all claims for fraud were dismissed by the Court's July 30, 2012 Order.

Thereafter, in the Consumer Fraud Action, JSRM and Berkeley moved to dismiss the consumer fraud claim. On December 7, 2012, the Honorable Lisa F. Chrystal, J.S.C. dismissed the consumer fraud claim because the issue had already been resolved in the Chancery Division Action by Judge Malone. (See Blackwell Decl., Ex. B). Therefore, Judge Chrystal found that the Consumer Fraud Action was barred by the doctrine of collateral estoppel. (Blackwell Decl., Ex. B, p. 10).

2225608.1

b.      **The Fraudulent Conveyance Action**

On October 18, 2012, JSRM and Berkeley filed a complaint in the Union County Chancery Division alleging that the Mondellis conspired with their attorney, Mr. Rosellini, as well as Heidi Santore and August N. Santore, Jr., Esq. to fraudulently transfer the Residential Property to Heidi Santore for approximately $50,000, an amount well below fair market value (the "Fraudulent Conveyance Action"). (Blackwell Decl., Ex. C).   The deed conveying the Residential Property from Anna Mondelli to Heidi Santore was prepared and witnessed by Rosellini. (Id. at ¶ 40).

Mondelli failed to answer the complaint.   Rosellini filed an answer including a counterclaim against JSRM and Berkeley and a third-party complaint against the principals of JSRM, Jack Silverman and William Silverman; the attorney for JSRM and Berkeley throughout the Mondelli Litigation, Mr. Porter; and the bankruptcy trustee and his attorneys, Nicholas Delzotti and Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C. (Blackwell Decl., Ex. D, p. 3).  The third-party complaint alleged that the third-party defendants conspired to commit fraud upon the Court, resulting in the judgment in the General Equity Action. (Id.).

On December 9, 2013, the Honorable Frederic S. Kessler, P.J.Ch. granted the motion to dismiss the third-party complaint by Mr. Porter, finding that there was no private cause of action for fraud upon the court, but rather, "it is an equitable remedy that affords relief from a judgment[.]" (Id. at p. 5) (emphasis in original).  The Court went on to opine that "[a]llowing a separate cause of action for damages for fraud upon the court would effectively require this court to relitigate issues that have been fully and finally concluded in this court and in the bankruptcy court.  Doing so would run afoul of the policies embodied in the entire controversy doctrine." (Id. at p. 7).

11

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND, THEREFORE, SHOULD BE DISMISSED AS AGAINST FISCHER, PORTER & THOMAS, P.C. AND ARTHUR L. PORTER, JR.

Mondelli's claims for alleged violations of his First, Fourth, Fifth and Fourteenth Amendments, due process and equal protection rights against the Attorney Defendants fail as a matter of law, because the Attorney Defendants are not "state actors" within the meaning of 42 U.S.C. § 1983.  Further, plaintiff has failed to allege, because he cannot, that the Attorney Defendants participated in any conduct that allegedly violated his aforementioned rights. Plaintiff's state claim similarly fails because plaintiff has not alleged any conduct on behalf of the Attorney Defendants.  Accordingly, the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

When considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), "a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  A Rule 12(b)(6) motion to dismiss should only be granted where "it appears to a certainty that no relief could be granted under any set of facts which could be proved." Id.

The Court, however, will "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" Santiago v. Warminster Twp., 629 F.2d 121, 128 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  Further, "[t]o survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "'A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Sheridan, 609 F.3d at 262 n.27).

Pursuant to the standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), when determining the sufficiency of a complaint under the pleading regime established by those cases, the Court will undertake the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (internal citations omitted).

Here, Mondelli's barren, conclusory statements that the Attorney Defendants acted "under color of law" and that the other Defendants in this case acted in accordance with the Attorney Defendants legal advice are not sufficient to maintain claims against the Attorney Defendants, private parties, under 42 U.S.C. § 1983. Plaintiff has not substantiated these bare allegations with any facts suggesting that the Attorney Defendants are state actors. Accordingly, because the Attorney Defendants are not state actors, Mondelli cannot state a claim under Section 1983 or the Civil Rights Act. Additionally, Plaintiff has failed to allege "outrageous" conduct by the Attorney Defendants that would support a claim for intentional infliction of emotional distress; therefore, this claim similarly fails. Finally, Mondelli's Complaint is barred by the entire controversy doctrine as Mondelli had to opportunity to raise these claims in the 2012 Fraudulent Conveyance Action brought by the Silverman Defendants as well as the Consumer Fraud Action, but failed to do so. Accordingly, the Complaint should be dismissed in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).

2225608.1

## POINT II

### THE ATTORNEY DEFENDANTS CANNOT BE LIABLE PURSUANT TO SECTION 1983

Though Mondelli has stated that Defendants were "acting under color of law," he has asserted no factual allegations supporting this conclusory statement. The Attorney Defendants are private actors, and Mondelli has failed to allege with the requisite specificity the alleged connection between the Attorney Defendants and any governmental entity. Therefore, Mondelli's claims under Section 1983 should dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Section 1983 provides for a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. It is well-recognized that this statute does not create substantive rights, but only provides a remedy for the deprivation of rights established in the United States Constitution or other federal laws. Bradshaw v. Township of Middletown, 296 F. Supp. 2d 526, 537 (D. N.J. 2003), aff'd, 145 Fed. Appx. 763 (3d Cir. 2005).

Specifically, Section 1983 provides that every:

> person who under color of any statute, ordinance, regulation, custom, or usage . . . subject, or causes to be subjected, any citizen of the United States. . .to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity or other proper proceeding for redress.

Accordingly, to state a claim pursuant to Section 1983, a plaintiff must establish "(1) conduct committed by a person acting under color of state law, and (2) that this conduct deprived [him or] her of 'rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Lee-Patterson v. New Jersey Transit Bus Operations, Inc., 957 F. Supp. 1391, 1398 (D. N.J. 1997) (citation omitted) (emphasis added).

14

Where the defendants are not state or municipal entities, as is the case here, the Court must determine whether "their activity can nevertheless be deemed to be under color of law." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995). This requirement is a threshold issue; there can be no liability under 42 U.S.C. § 1983 if the defendant did not act under color of law. <u>Id.</u> There is no "simple line" between state and private actors; however, the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009) (citations omitted). <u>See</u> <u>also</u> <u>Mauro v. Beil</u>, 213 Fed. Appx. 131, 132 (3d Cir. 2007) (affirming the dismissal of the plaintiff's complaint because the defendants were not state actors and they did not act under color of state law where the plaintiff alleged only that the defendants pretended to be affiliated with law enforcement).

To determine whether this nexus exists, thereby establishing that a private entity's activity can be deemed to be under color of law, the Third Circuit has delineated three tests generated from Supreme Court jurisprudence:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

<u>Id.</u>, (citing <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1142 (3d Cir. 1995)); <u>McKeesport Hospital v. Accreditation Council</u>, 24 F.3d 519, 524 (3rd Cir. 1994). Regardless of the approach, however, the analysis of whether a private individual is acting under color of State law is "grounded in a basic and clear requirement 'that the defendants ... have exercised power possessed by virtue of State law and made possible only because [they are] clothed with the

authority of State law.'" Groman, supra, 47 F.3d at 638 (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 46 (1988)).  If none of the elements of each of these tests are present, there is no State action and the case must be dismissed.  Id.

Here, Mondelli has alleged that the Attorney Defendants acted "in concert with" the authorities from Berkeley Heights, thereby appearing to invoke the second test, the "nexus approach," or the third test, the "joint participation or symbiotic relationship" test.[3]  Under the nexus approach, State action may be found if "'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the State itself.'"  McKeesport, supra, 24 F.3d at 524 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 482 (1974)). See also Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir. 1995) ("the nexus test requires sufficiently close relationship (i.e., through State regulation or contract) between the State and the private actor so that the action taken may be attributed to the State").  Under the joint participation or symbiotic relationship approach, State action may be found if the private party is a "willful participant in joint action with the State or its agents."  Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185, 189 (1980).  See also McKeesport, supra, 24 F.3d at 524 (State action may be found where the private party "has acted with the help of or in concert with State officials").

---

[3] Notably, Mondelli's claims against the Attorney Defendants would also fail under the first of these three tests. See McKeesport, supra, 24 F.3d at 524 (quoting Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185, 194 (1978)). (Under the exclusive government function approach, State action may be found when the private party has been "delegated ... a power 'traditionally exclusively reserved to the State.'")  Mondelli has alleged that the Attorney Defendants provided legal advice to their clients, conduct not traditionally reserved to the State.

It is important to note that complaints alleging civil rights violations against private individuals or entities, such as in the instant case, must not contain conclusory allegations with no factual support. Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3rd Cir. 1976) ("[i]n this circuit, plaintiffs in civil rights cases are required to plead facts with specificity"); Hauptmann v. Wilentz, 570 F.Supp. 351, 381 (D.N.J. 1983), aff'd, 770 F.2d 1070, cert denied, 106 S.Ct. 887, 474 U.S. 1103, 88 L.Ed.2d 922 (1986) ("vague and conclusory allegations in civil rights complaints will not survive a motion to dismiss"). Further, when pleading a conspiracy, the "plaintiff must allege with sufficient particularity that the private party and a State actor reached some explicit or tacit understanding or agreement to deprive the plaintiff of a federal right." Hauptmann v. Wilentz, supra, 570 F.Supp. at 392. See also 6th Camden Corp. v. Evesham Tp., Burlington County, 420 F.Supp. 709, 731 (D.N.J. 1976).

Here, the only action Mondelli claims to have been taken by the Attorney Defendants is legal advice allegedly given to the Silverman Defendants. (Pl.'s Compl., ECF No. 1, ¶¶ 80, 83). These conclusory allegations are not sufficient to render the Attorney Defendants state actors under the nexus approach or the joint participation or symbiotic relationship approach. Rather, the simple fact is that the Attorney Defendants were merely the attorneys for the Mondelli's adversary in the various litigation among these parties. It is also clear, however, that a private attorney acting on behalf of her client is not a State actor for purposes of Section 1983. Williams v. Dark, 844 F.Supp. 210, 213 (E.D.Pa. 1993), aff'd, 19 F.3d 645 (3rd Cir. 1994) ("[p]rivate attorneys acting on behalf of their clients are not State actors") (citing Polk County v. Dobson, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509, 519 (1981)). See also Washington v. Twp. of Hillside City Council, 2008 U.S. Dist. LEXIS 51229, 35 (D.N.J. June 30, 2008) (citation omitted) (even where an attorney is appointed by a court, an attorney "does not act under the

17

color of state law when performing a lawyer's traditional functions as counsel[.]"); <u>McDaniel v. N.J. State Police</u>, 2013 U.S. Dist. LEXIS 23481, 5 (D.N.J. Feb. 20, 2013) (citation omitted) ("It is well-settled that neither a privately retained counsel nor a court-appointed attorney performing a lawyer's traditional function is deemed acting under color of law.").

Thus, Mondelli has failed to plead a cognizable cause of action against the Attorney Defendants because Mondelli cannot establish the basic and clear requirement "that [these defendants] ... have exercised power possessed by virtue of State law and made possible only because [they are] clothed with the authority of State law." <u>Groman</u>, <u>supra</u>, 47 F.3d at 638 (citations omitted).  The First, Second and Third Counts of the complaint should therefore be dismissed.

18

POINT III

**PLAINTIFF'S STATE AND COMMON LAW CLAIMS SIMILARLY FAIL**
**AS A MATTER OF LAW AND SHOULD BE DISMISSED**

Mondelli has also attempted to allege claims for violations of his constitutional rights under the Civil Rights Act and for intentional infliction of emotional distress. Both of these claims similarly fail as a matter of law and should be dismissed.

**A.** **Plaintiff's Claim Under the Civil Rights Act Should Be Dismissed.**

The Civil Rights Act provides, in pertinent part that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c). Accordingly, the Civil Rights Act "provides a person may bring a civil action under the Act in two circumstances: (1) when he's deprived of a right, *or* (2) when his rights are interfered with by threats, intimidation, coercion or force." Felicioni v. Administrative Office of the Courts, 404 N.J. Super. 382, 400 (App. Div. 2008).

Similar to the claims under Section 1983, a private cause of action under the Civil Rights Act *must* involve "a person acting under color of law." Perez v. Zagami, LLC, 218 N.J. 202, 216 (2014) ("Our interpretation of the private action authorized under N.J.S.A. 10:6-2(c) advances that legislative intent to make the private cause of action correlate to the federal cause of action authorized by Section 1983...we hold that the phrase "person acting under color of law" in N.J.S.A. 10:6-2(c) applies to deprivation as well as to interference, or attempt-to-interferm, claims brought by private party plaintiffs under the Act."); Cottrell v. Zagami, LLC, 218 N.J.

217, 220 (2014) (finding, consistent with the holding in <u>Perez</u>, <u>supra</u>, that a private right of action under the Civil Rights Acts exists only as against an individual "acting under color of law."). Accordingly, because the Attorney Defendants are not state actors, Mondelli cannot set forth a claim under the Civil Rights Act and Fourth Count of the complaint should be dismissed.

**B.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law.**

Plaintiff similarly has not stated and cannot state a claim for intentional infliction of emotional distress as against the Attorney Defendants.  To state a claim for intentional infliction of emotional distress, a plaintiff must show:

> conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur, (3) proximately causing emotional distress that is "so severe that no reasonable man could be expected to endure it."

<u>Ramirez v. United States</u>, 998 F. Supp. 425, 434 (D.N.J. 1998) (citing <u>Buckley v. Trenton Sav. Fund Soc'y</u>, 544 A.2d 857, 863 (N.J. 1988)).  Apparently, Mondelli bases this claim on the same conduct by the Attorney Defendants as his Section 1983 claims.  This claim likewise fails.

Even taking the conclusory allegations of conduct on behalf of the Attorney Defendants as true, i.e., giving legal advice to remove items from Mondelli's garden stand, the same does not arise to "outrageous conduct."   Instances where outrageous conduct has been found include where a physician told parents that their son had cancer when he did not, where a hospital was unable to find the body of a deceased infant for three weeks and where a defendant brought a mob of people to the plaintiff's home threatening to lynch him if he did not move out of the town. <u>See</u> <u>Glenside West Corp. v. Exxon Co. USA</u>, 761 F. Supp. 1100, 1113 (D. N.J. 1994) (citations omitted).  The Attorney Defendants' conduct falls well short of the requisite "atrocious

20

and utterly intolerable" conduct.  Therefore, Fifth Count of the complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

21

**POINT IV**

**THE COMPLAINT IS BARRED BY NEW JERSEY'S ENTIRE CONTROVERSY DOCTRINE**

Because Mondelli had ample opportunity to bring these claims in the other two most recent actions involving these parties, he is now precluded from bringing them by the entire controversy doctrine. The entire controversy doctrine is set forth in New Jersey Rule of Court 4:30A, which mandates that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." The doctrine "requires 'a party to bring in one action "all affirmative claims that it might have against another party, including counterclaims and cross-claims," and to join in that action "all parties with a material interest in the controversy," or be forever barred from bringing a subsequent action involving the same underlying facts.'" Kanter v. Scharf, 2013 U.S. Dist. LEXIS 119809, 17 (D.N.J. Aug. 23, 2013) (citing Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 885 (3d Cir. 1997)). Under the doctrine, "plaintiff is precluded from litigating in a subsequent proceeding both claims that it actually litigated and claims that it could have litigated in an earlier proceeding." Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d Cir. 1991), cert. denied, 502 U.S. 861 (1991).

New Jersey courts, both federal and state, have made abundantly clear that "New Jersey's entire controversy doctrine is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999), cert. denied sub nom., Agusta v. Paramount Aviation Corp., 528 U.S. 878 (1999); Total Packaging Corp. v. Tenneco Packaging Corp., 2004 U.S. Dist. LEXIS 6199, at *4 n.3, 11-12 (D.N.J. Apr. 2, 2004) (examining the "close relationship between the present litigation and the prior case" and

22

mentioning that portions of the complaints in each action were "identically worded" in determining that the entire controversy doctrine barred the second action); see also Kozyra v. Allen, 973 F.2d 1110, 1111 (3d Cir. 1992), reh'g denied, 1992 U.S. App. LEXIS 22910 (3d Cir. Sept. 18, 1992) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 560 A.2d 1169, 1172 (1989)) (explaining that the entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy") (internal quotations omitted); Heir v. Del. River Port Auth., 218 F. Supp. 2d 627, 632 (D.N.J. 2002) (quoting Olds v. Donnelly, 150 N.J. 424, 431, 696 A.2d 633 (1997) ("[T]he courts of New Jersey have developed the entire controversy doctrine to assure that all aspects of a legal dispute occur in a single lawsuit and the doctrine, as presently understood, requires that parties present all affirmative claims and defenses arising out of a controversy.") (internal quotations omitted); Dowdell v. Univ. of Med. And Dentistry of N.J., 94 F. Supp. 2d 527, 534 (D.N.J. 2000) (citing Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343-44, 476 A.2d 250 (1984)) ("At a minimum, the entire controversy doctrine mandates joinder of those claims arising from the same overall transaction involving the parties already named in the lawsuit.").

Under the Full Faith and Credit Act, "the judicial proceedings of a state court shall have the same full faith and credit within every court in the United States as they have by law or usage in the courts of the issuing state." Paramount Aviation Corp., 178 F.3d at 141; see also 28 U.S.C. § 1738. Therefore, a federal court in New Jersey must apply New Jersey's preclusion law, including its entire controversy doctrine, when determining the preclusive effect of a previous judgment issued by a New Jersey state court. See Total Packaging Corp., 2004 U.S. Dist. LEXIS,

at *8, 13 (determining that the entire controversy doctrine should be applied where the first judgment was issued by a New Jersey court and the district court had jurisdiction over the second case on grounds of diversity, and explaining that "[w]hen the first of two concurrent actions is reduced to judgment by a New Jersey court, the entire controversy doctrine becomes applicable, possibly precluding the continued viability of the later-filed action before a federal court sitting in diversity applying New Jersey law"); Sutton v. Sutton, 71 F. Supp. 2d 383, 390 (D.N.J. 1999) (explaining that the court must apply the entire controversy doctrine where prior suits took place in New Jersey), aff'd, 216 F.3d 1077 (3d Cir. 2000), cert. denied, 531 U.S. 928 (2000); see also Paramount Aviation Corp., 178 F.3d at 136, 141-42 (explaining that "federal courts must give the same preclusive effect to a state court judgment as another court of that state would, unless to do so would violate due process," and that "New Jersey law . . . determines the preclusive effects of a prior New Jersey state court judgment on the merits"); Bernardsville Quarry, 929 F.2d at 928 (concluding that the district court was required to accord the same preclusive effect to a New Jersey court's adjudication as would the courts of New Jersey).

The Third Circuit Court of Appeals and District of New Jersey routinely apply the entire controversy doctrine to bar claims that were actually litigated or could have been litigated in previous New Jersey state court actions. See Bernardsville Quarry, 929 F.2d at 928, 930 (applying the entire controversy doctrine to bar subsequent proceeding in federal court where plaintiff had sued defendant based on the same underlying facts in state court and lost); Total Packaging Corp., 2004 U.S. Dist. LEXIS, at * 1, 12 (concluding that the entire controversy doctrine applied to preclude subsequent action in federal court where federal court action and previous state court action arose from the same series of events); Heir, 218 F. Supp. 2d at 633, 638-39 (applying entire controversy doctrine to preclude subsequent federal action where

2225608.1

plaintiffs' claim arose from the same transaction that was at issue in the previous state court action); Dowdell, 94 F. Supp. 2d at 534, 540, 540 n.15 (not only concluding that claims related to the claims adjudicated in the state court action were barred by res judicata and the entire controversy doctrine, but also concluding that principles of full faith and credit and New Jersey jurisprudence compelled the court to dismiss claims that were actually previously adjudicated in the state court action); Sutton, 71 F. Supp. 2d at 392 (concluding that res judicata and the entire controversy doctrine barred subsequent action in federal court where claims were asserted and rejected or could have been asserted in previous state court actions).

Pertinent to the present action, in Bernardsville Quarry, the Third Circuit Court of Appeals explained that

> [plaintiff] BQI had but one choice when the state action went to trial – which was to litigate every claim it had to the best of its ability – which, judging from the record, BQI did skillfully. Unfortunately for BQI, it did not prevail.  BQI cannot avoid the consequences of its failure to prevail in state court by taking a second bite of the apple now.   We will therefore affirm the judgment of the district court dismissing this case in its entirety.

929 F.2d at 930.  Similarly, in Sutton, the court rejected plaintiff's federal claims on the grounds of the entire controversy doctrine and res judicata, and chided plaintiff for attempting to characterize his case as federal by asserting federal claims when in reality "the case is nothing more than an attempt to manufacture federal jurisdiction by assembling the claims that have already been asserted and rejected in the Superior Court, or which could have been brought in that court when related disputes arising from these transactions were litigated." 71 F. Supp. 2d at 392.

In determining whether successive claims constitute one controversy for purposes of the entire controversy doctrine, "the central consideration is whether the claims . . . arise from

related facts or the same transaction or series of transactions. Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004) (quoting DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494, 502 (N.J. 1995)) (alteration in original) (internal quotations omitted).   Another consideration pertinent to the application of the doctrine is whether the claimant had a fair and reasonable opportunity to fully litigate its claim in the original action. Kozyra, 973 F.2d 1110 at 1112 (citation omitted); Heir, 218 F. Supp. 2d at 633 (citation omitted).  Furthermore, "[a]pplication of the entire controversy doctrine requires an equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum." Heir, 218 F. Supp. 2d at 636 (quoting Hernandez v. Region Nine Housing Corp., 146 N.J. 645, 661, 684 A.2d 1385 (1996)) (internal quotations omitted).

Here there is no doubt that Mondelli's current complaint against the Attorney Defendants is barred by the entire controversy doctrine.  In this action, Mondelli bases his claims upon facts arising on or about October 5, 2012 - - just days prior to the filing of the complaint in the Fraudulent Conveyance Action in the Union County Chancery Division.  The facts as alleged by Mondelli, regarding the alleged removal of items from the garden stand after the sheriff's sale and allegedly in violation of Mondelli's rights as a tenant, relate to the various claims in the transaction as a whole.  Mondelli had the opportunity to bring a counterclaim regarding these allegations in the Fraudulent Conveyance Action, but failed to do so.  Additionally, Mondelli could have amended his claim in the Consumer Fraud Action, which was ultimately decided by Order and Opinion dated December 7, 2012 granting the motion to dismiss the Consumer Fraud Action two months after the alleged removal of his items from the garden stand. See Great Western Mining & Mineral Co. v. ADR Options, Inc., 882 F. Supp. 2d 749, 761 (D.N.J. 2012)

26

(finding that the entire controversy doctrine barred the plaintiff's claims where the plaintiff knew of the facts allegedly giving rise to the cause of action four months prior to the dismissal of the New Jersey Superior Court action); see also New Jersey Rules of Court, R. 4:9-1 ("leave [to amend a claim] … shall be freely given in the interest of justice."). He again failed to do so. The courts of New Jersey provided Mondelli with the same fair and reasonable opportunity to fully litigate its claims as would be afforded by this Court. Because the entire controversy doctrine bars claims that have actually been litigated or that could have been litigated in an earlier proceeding, this action, which involves claims that could have been brought by Mondelli in the Consumer Fraud Action or the Fraudulent Conveyance action, should be dismissed.

27

## CONCLUSION

For the reasons set forth herein, the complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) as it fails to set forth a claim upon which relief may be granted and is barred by the entire controversy doctrine.

Respectfully submitted,

**GRAHAM CURTIN**
A Professional Association
Attorneys for Defendants,
*Fischer, Porter & Thomas, PC.*
*and Arthur L. Porter, Jr. Esq.*

Dated: January 22, 2015

By: /s/ *David M. Blackwell*
       DAVID M. BLACKWELL

28

2225608.1