Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR MONDELLI,<br><br>Plaintiff,<br><br>v.<br><br>BERKELEY HEIGHTS POLICE DEPARTMENT, MICHAEL P. MATHIS, Chief of Police of the Berkeley Heights Police Department, in his individual capacity, MICHAEL DELIA, Detective at the Berkeley Heights Police Department, in his individual capacity, JOHN DOE 1, Supervising Officer of Michael Delia, JOHN DOE 2, Berkeley Heights Police Officer in his individual capacity, THOMAS BOCKO, Zoning Officer of Berkeley Heights, in his individual capacity, JACK SILVERMAN REALTY & MORTGAGE CO., L.L.C., BERKELEY REALTY PARTNERS 244, LLC, JACK SILVERMAN, in his individual capacity, WILLIAM SILVERMAN, in his individual capacity, FISCHER, PORTER & THOMAS, P.C., ARTHUR PORTER, JR., partner in Fischer, Porter & Thomas, P.C., in his individual capacity, ROBERT DOWLING, in his individual capacity, and JACK DOWLING, in his individual capacity,<br><br>Defendants. | Civ. No. 14-6196 (KSH) (CLW)<br><br><br><br>**OPINION** |

## I.   INTRODUCTION

The plaintiff, Victor Mondelli, seeks $60,000,000 in damages against defendants Berkeley Heights Police Department, Chief of Police Michael P. Mathis, Detective Michael Delia, Zoning Officer Thomas Bocko, and Police Officers John Doe 1 and John Doe 2 (collectively the "Berkeley Heights Municipal Defendants"); Jack Silverman Realty & Mortgage Company, LLC ("Silverman Realty"), Silverman Realty owners, Jack Silverman and William Silverman, Berkeley Realty Partners 244, LLC ("Berkeley Realty")(collectively the "Realty

1

Defendants"); Robert Dowling and Jack Dowling; and Arthur L. Porter, Jr. Esq. and Fischer, Porter & Thomas, P.C. (collectively the "Attorney Defendants"). The federal lawsuit stems from drawn out state court litigation, and seeks to find its way into federal court through Mondelli's claim, under 42 U.S.C. § 1983, that all of these defendants, with whom he has been actively litigating in various New Jersey courts, conspired and deprived him of his first, fourth, fifth and fourteenth amendment rights. Most defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by means of three motions (D.E. 18, 22, 25) brought by the Attorney Defendants, Berkeley Heights Municipal Defendants, and Realty Defendants, respectively.

## II.     Factual and Procedural History

Mondelli's complaint runs 138 paragraphs spread over 28 pages. The factual allegations are:

Since at least 1999, Mondelli operated a self-serve garden stand on commercial property owned by his family, located at 258 Springfield Avenue, Berkeley Heights, NJ (the "Commercial Property"). (Compl. ¶¶ 20, 22- 23.) In addition to the garden stand, the Commercial Property consisted of a three store strip mall, which held a Domino's Pizza, a deli, and an empty storefront. (Compl. ¶ 48.) The Mondelli family owned two other pieces of contiguous property at 240 Springfield Avenue (the "Vacant Lot") and 260-264 Springfield Avenue (the "Residential lot"). (Compl. ¶ 22.)

As of 2004 Mondelli was managing all three properties. (Compl. ¶¶ 23, 25.) A combination of inexperience and mental illness led to his decision to voluntarily petition for Chapter 13 bankruptcy on February 18, 2004. (Compl. ¶¶ 25-26.) Over the course of the bankruptcy proceedings the Chapter 13 bankruptcy was converted to a Chapter 7 proceeding,

Not for Publication

reconverted to a Chapter 13, and then finally in 2007, advanced as a Chapter 7 bankruptcy action. (Compl. ¶¶ 30-31, 34.)

Throughout, Mondelli went to great lengths to maintain possession of the garden stand. (Compl. ¶ 37.) In May 2007 a purchaser offered to buy the Commercial Property for $1,300,000 through a bankruptcy auction. (Compl. ¶ 36.) Instead of accepting, Mondelli tried to refinance the property to satisfy his debt. (Compl. ¶¶ 37-39.) According to the complaint, Mondelli understood that if the refinancing failed, the Commercial Property would be sold through auction. (Compl. ¶ 39.) Eventually, Mondelli obtained an 18 month loan for $650,000, secured by the Commercial Property and the Vacant Lot, from Silverman Realty. (Compl. ¶¶ 40-42.) After interest the loan was due in full for $820,000. (Id.) Mondelli executed a ground lease and subordinated his interest in the property to Berkeley Realty for purposes of construction and permanent financing of a "build-out." (Compl. ¶ 43.)

The mortgage deal between Mondelli and Silverman Realty closed in May of 2007. (Compl. ¶ 47.) Shortly afterwards, Mondelli refused to sign an additional subordination agreement to allow Silverman Realty and Berkeley Realty to borrow against the Commercial Property. (Compl. ¶ 49.) At this point Mondelli was still operating his garden stand on the Commercial Property.

September, 2007 marked the beginning of six years of "protected [sic] bitter and complex litigation" in state court among Silverman Realty, Berkeley Realty and Mondelli. (Compl. ¶¶ 51-52). To better understand the course of the litigation the Court relies on information set forth in the written decision of Hon. John F. Malone, Presiding Judge of the Chancery Division, Union County, who conducted a six week trial on a complaint filed by Silverman Realty and Berkeley

3

Realty against Mondelli and his mother, Anna Mondelli, and made his factual findings and legal conclusions in a 34 page opinion dated July 30, 2012.  (D.E. 18-3, Letter Decision, 1a.)

Generally, where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."  Fed. R. Civ. Pro. 12(d).  However, the court may also rely on documents that are "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.,* 1114 F.3d 1210, 1425-26 (3d Cir. 1997); *see also Moore v. Beers*, 2015 WL 4638239 at *3 (N.J.D. Aug. 4, 2015) (Hillman, J.) (holding a "court reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice" except where there is "an undisputed authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  Mondelli specifically references Judge Malone's decision.  (Compl. ¶ 56) (stating "The Union County Chancery Court issued a July 30, 2012 Opinion and Judgment that did not address issues concerning Victor Mondelli's [sic] and injunction as to Victor Mondelli's continued rights in the Garden Stand.")  He then spends seven paragraphs discussing what is and is not included in that opinion.  (Compl. ¶¶ 57-61, 63-64.)  As Judge Malone's opinion is clearly integral to Mondelli's complaint, this court relies on the copy attached to the Attorney Defendants' motion to dismiss.

The state litigation began when Mondelli sought to undo the mortgage transaction with Silverman Realty.  (Compl. ¶¶ 51-52; Letter Decision, 6a.)  Through new counsel, who represents him in the within case, Mondelli filed eight appeals to the district court from bankruptcy court orders, and four more appeals to the Third Circuit.  (Id.)  While one appeal

remained pending when Judge Malone wrote his decision, it appears that the others found no traction and were consistently dismissed or denied. (Id. at 6a-7a.)

On November 18, 2008, Mondelli defaulted on his mortgage to Silverman Realty. (Compl. ¶¶ 53-54; Letter Decision, 8a.) Silverman Realty brought foreclosure actions on the mortgage in July, 2009. (Letter Decision, 7a.) On September 6, 2011, the judgment of foreclosure was entered, and following numerous motions and appeals by Mondelli, Silverman Realty obtained title to the Commercial Property through a sheriff's sale on March 21, 2012. (Compl. ¶ 53; Letter Decision, 9a.) Despite the judicial foreclosure and sale of the Commercial Property, Mondelli asserted that he maintained rights to the garden stand. (Compl. ¶¶ 72, 74.)

On February 3, 2011, Silverman Realty and Berkeley Realty filed a 12 count complaint in the Chancery Division that was assigned to Presiding Judge Malone, seeking to quiet title to the Commercial Property and the Vacant Lot. Mondelli filed counterclaims, and the parties tried all respective counts over six days. On July 30, 2012, in a 34 page decision, Judge Malone awarded judgment in favor of Silverman Realty and Berkeley Realty. (Compl. ¶ 53.) Silverman Realty and Berkeley Realty were granted over $2.1 million in compensatory and punitive damages; Mondelli was "enjoin[ed] from interfering with the redevelopment of the property"; and the court declared that title of the Commercial Properly was vested in Silverman Realty. (Letter Decision, 12a, 16a, 33a-34a.)

A new dispute bloomed in the fall of 2012. In the still-active garden stand, Mondelli maintained firewood for sale, along with equipment and family memorabilia, claimed to be worth about $2,000. (Compl. ¶¶ 54, 74.) On October 4, 2012, Judge Malone conducted a telephone conference among counsel. Present counsel continued to represent Mondelli, and Silverman Realty and Berkeley Realty were represented by Arthur Porter, Jr. and Fischer, Porter

& Thomas, P.C. (Compl. ¶75.) During the telephone conference Silverman Realty and Berkeley Realty claimed that Mondelli's continued use of the garden stand interfered with their quiet enjoyment of the Commercial Property in spite of the court's rulings in their favor. (Compl. ¶76.) According to Mondelli, Judge Malone directed Silverman Realty and Berkeley Realty to file an order or make a motion so that he could rule on the issue of quiet title. (Compl. ¶ 79.) Instead, according to the complaint, Silverman Realty, Jack Silverman, William Silverman and Berkeley Realty (the Realty Defendants) directed their alleged agents, Robert Dowling and Jack Dowling, to physically remove Mondelli's property from the garden stand. (Compl. ¶ 80.) Mondelli asserts this was done so the Realty Defendants could enter into an agreement with the Dowlings to sell Christmas trees from the stand during the upcoming holiday season. (Compl. ¶ 84.)

The Dowlings removed Mondelli's property, and Mondelli called the police. (Compl. ¶ 86.) The specific police actors he is suing are Berkeley Heights Chief of Police, Michael P. Mathis, Detective Michael Delia, and Zoning Officer Thomas Bocko. Mondelli alleges that instead of providing assistance to him, Detective Delia and his subordinate Officer John Doe 2 advised him "that if he stepped anywhere near the Garden Stand he would be arrested for trespass." (Compl. ¶¶ 89-90.) Mondelli later learned that the Berkeley Heights Police Department had provided security to Robert and Jack Dowling when they removed Mondelli's effects. (Compl. ¶ 92.) Mondelli further alleges that the Realty Defendants, through the Dowlings, informed the Berkeley Heights Police Department that he had abandoned the garden stand. (Compl. ¶ 83.) Later, Zoning Officer Thomas Bocko informed Mondelli that he was approving permits for Robert and Jack Dowling to sell Christmas trees out of the garden stand. (Compl. ¶ 90.) The complaint recites that Jack Silverman and William Silverman were charged

Not for Publication

with disorderly persons offenses in connection with this matter, and that these actions are pending in municipal court. (Compl. ¶ 93.) Mondelli alleges that additional charges against the William and Jack Silverman are under review. (Compl. ¶ 94.)

On these facts, on October 6, 2014, Mondelli filed the within action under 42 U.S.C. § 1983 alleging conspiracy among the various actors mentioned above (excluding Judge Malone), in violation of the fourth, fifth and fourteenth amendments; violations of due process and equal protection rights; and retaliation for protected activity. Mondelli also asserts a statutory claim under the New Jersey Civil Rights Act and a common law claim for infliction of emotional distress. Mondelli seeks $10,000,000 in compensatory damages and $50,000,000 in punitive damages.

The Attorney Defendants, Berkeley Heights Municipal Defendants, and Realty Defendants have filed three separate motions under FRCP 12(b)(6) claiming that Mondelli has failed to state claims upon which relief can be granted.

### III. Standard of Review

In deciding a motion to dismiss under FRCP (12)(b)(6), the Court must accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom. The factual assertions in the complaint must be viewed in the light most favorable to the plaintiff. A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim upon which relief can be granted.

To survive a motion to dismiss, a plaintiff must "plead more than the possibility of relief." *Fowler v. UPMC Shadyside* 578 F.3d 203, 210 (3d Cir. 2009). The court will "disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Twp.,* 629 F.2d 121, 128 (3d Cir. 2010), *see also Zebrowski*

Not for Publication

*v. Wells Fargo Bank, N.A.*, 657 F.Supp.2d 511, 515-16 (D.N.J. 2009) (Rodriquez, J.) (holding "the court accepts as true well-pleaded allegations in the complaint, but does not accept unsupported conclusory statements").

### IV. Discussion of Claims Brought under 42 U.S.C. § 1983

Mondelli brings three claims under 42 U.S.C. § 1983. The first alleges that the defendants acted in a conspiracy to deny him his rights of due process under the fourth, fifth, and fourteenth amendment, and the use and enjoyment of his property. (Compl. ¶¶ 96-97.) The second claim asserts violations of Mondelli's fifth and fourteenth amendment rights to due process, compulsory process, equal protection, and freedom from interference with fundamental rights to privacy and freedom. (Compl. ¶¶ 104-06.) And the final § 1983 claim alleges violations of his first and fourteenth amendment rights against retaliation for protected activity. (Compl. ¶¶ 112-13.)

"The Supreme Court has set forth the two essential elements of a § 1983 action: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges or immunities secured by the constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993).

To act "under color of law," the wrongdoer must "misuse power, possessed by virtue of state law that is made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Where the defendants are not municipal or state actors the court must find a sufficient nexus to establish that the private entity's activity was still clothed with state authority. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (holding that there must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State"). The Third

Not for Publication

Circuit has outlined the three broad tests generated by the Supreme Court to determine where state action exists:

> "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insulated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

*Id.*

### A. The Attorney Defendants

Attorneys acting solely as private counsel without more are simply not acting under color of state law. *See Williams v. Dark*, 844 F.Supp. 210, 213 (E.D.Pa. 1993), *aff'd*, 19 F.3d 645 (3rd Cir. 1994); *see also Washington v. Twp. Of Hillside City Counsel*, 2008 WL 2683360 at*12 (D.N.J. June 30, 2008) (Chesler, J) (holding that even attorneys appointed by the court do not act under the color of state law "when performing a lawyer's traditional functions as counsel"). Mondelli does not allege any facts to demonstrate that the Attorney Defendants acted outside of their traditional role as counsel. His sweeping and unsubstantiated allegation that the Attorney Defendants' advice to their client was part of a "conspiracy" is a bare, unsupported conclusion which the court must disregard. *See generally, Santiago,* 629 F.2d at 128. There is no factual allegation in the complaint showing the Attorney Defendants were clothed with the authority of the state; the connection that is asserted is with the Silverman Defendants and it is that of attorney and client. All claims under § 1983 against the Attorney Defendants are dismissed.

### B. The Realty Defendants

None of the Realty Defendants are either a traditional municipal entity or municipal employee. Mondelli invokes the joint action test from *Kach v. Hose* to establish that they should nonetheless be considered state actors. The joint action test permits the finding that a private

9

party has acted "with the help of or in concert with" state officials sufficiently to be considered a willful participant in joint action with the state. *Kach*, 589 F.3d at 646. However, "[b]are assertions of joint action or a conspiracy are not sufficient to survive dismissal at the pleading stage." *Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (holding that vague allegations, even using words like "conspiratorial relationship" and "co-conspirators," without more, do not show "agreement and concerted action to deprive the plaintiff of his or her rights"). Clearly, Mondelli's conclusory allegations that the Realty Defendants "conspired with" the Berkeley Heights Police Department "under the color of law" do not pass the pleading specificity requirement.

Factually, the complaint alleges that the Realty Defendants, through their agents the Dowlings, "falsely represented to the authorities in Berkeley Heights that Victor Mondelli had abandoned the property," and received security protection from the police when removing the property based on this representation. (Compl. ¶ 83.) Case law has long established that invoking the judicial system or service of state police "does not make a party a co-conspirator or joint actor." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 954 (1982) (Powell, J. dissenting) (finding that a "citizen summoning the police to enforce the law ordinarily would not be considered to have engaged in a 'conspiracy'"); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (holding a "single request to the police, without more, was not sufficient to establish a claim against a private actor pursuant to § 1983"). Seeking and obtaining the assistance of a municipal police department or other government services, alone, is not sufficient to make an otherwise entirely private individual a state law actor. *See, e.g., Sparks*, 449 U.S. at 28 (holding that using the services of the court does not make a party a joint actor); *see also Peng,* 335 F.3d at 980 (holding that providing false statements to a

deputy that resulted in the plaintiff's arrest were not sufficient to transform the defendants into state actors). The mischief that would result were the law not rigorous in this regard does not need elaboration.

Actions by police officers in order to keep peace during a repossession do not constitute state action, nor does their presence serve to transform private actors into state actors. *See Mitchell v. Gieda*, 215 F. App'x 163, 165 (3d Cir. 2007). In *Mitchell*, several persons, including an off-duty police officer, sought to repossess restaurant equipment used by their tenants. *Mitchell*, 215 F. App'x at 164. After waiting an hour for the tenants to arrive, they called for an on-duty police officer to keep peace should an altercation arise during the repossession. *Id.* The police officer disengaged the restaurant alarm and explained to the tenants, when they eventually arrived, that the individuals repossessing the property had been advised they could by their attorneys. *Id.* The Third Circuit found that "an officer's presence at the scene of, and acquiescence in, a private repossession is not state action unless accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party," and that the on-duty officer's action did not rise to that "level of critical involvement." *Id.* at 165. The court did not find that there was any conspiracy among those repossessing the property, the police officer, and the state that would convert the repossessors into state actors.

Inchoate, passive police presence does not serve to transform what the Realty Defendants or Dowlings did on the premises into "state action." The pleaded facts are that the Realty Defendants requested, and their alleged agents got, police supervision from the Berkeley Heights Police Department when Jack and Robert Dowling physically repossessed the garden stand. Assuming for the sake of argument that the harm complained of – removal of Mondelli's

personal property – was actionable as a constitutional tort, there are no allegations beyond the phrase "provided the security" that any police officers were actively involved in the removal of the property. (Compl. ¶ 92.) Mondelli did not even learn that the police were present until after the property removal took place. (Id.) Without facts alleging that the police were active participants in the property removal or that the police used authority to remove the property, this case, like *Mitchell,* does not allege the "critical involvement" needed to find state action on the part of the police.

All §1983 claims against the Realty Defendants are dismissed.

### C. Berkeley Heights Municipal Defendants

1. §1983 Claims Against the Berkeley Heights Police Department

Mondelli names the Berkeley Heights Police Department as one of the Berkeley Heights Municipal Defendants in his complaint. The "numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not." *See PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825 (D.N.J. 1993) (Barry, J.) (citing nine cases in support). Accordingly, Mondelli's § 1983 claims against the Berkeley Heights Police Department.

2. § 1983 Claims Barred by *Rooker-Feldman*

The remaining Berkeley Heights Municipal Defendants are Chief of Police Michael P. Mathis, Detective Michael Delia, Delia's Supervising Officer John Doe 1, Police Officer John Doe 2, and Zoning Officer Thomas Bocko. They argue for dismissal based on qualified immunity and Mondelli's failure to meet the § 1983 pleading standards.

These contentions, however, do not address the fundamental infirmity in these particular allegations against this group of defendants: they were taking steps to enforce the rights of the

Not for Publication

Realty Defendants, which they gained when they prevailed in the Chancery Court litigation. Giving any credence to the constitutional torts alleged of necessity requires this Court to ignore, disagree with, overrule, or otherwise do violence to the judgment in state court that vested title to the Commercial Property in Silverman Realty. As such, the Court must examine, *sua sponte*, whether certain of Mondelli's § 1983 claims are barred by the *Rooker-Feldman* doctrine. *See Schneller ex rel. Schneller v. Fox Subacute at Clara Burke,* 317 Fed. Appx. 135, 138 (3d Cir. 2008) (holding that the court may consider subject-matter jurisdiction sua sponte).

The *Rooker-Feldman* doctrine draws its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It bars lower federal courts from exercising jurisdiction when doing so would act as "the functional equivalent of an appeal from a state court judgment." A claim falls into the category barred by *Rooker-Feldman* when (1) the claim was actually litigated in state court; or (2) when the claim is inextricably intertwined with the state adjudication. *ITT Corporation v. Intelnet International Corporation,* 366 F.3d 205, 210 (3d Cir. 2004). The doctrine bars claims by parties, and persons in privity with the parties, to the underlying state action. *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 364 F.3d 102, 105 (3rd Cir.2004). The *Rooker-Feldman* doctrine is confined to cases where state court losers complain of resulting injuries and implore the federal court to review and reject those judgments. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Circ. 2010) (quoting *Exxon Mobile Corp.v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)) (holding that the *Rooker-Feldman* application is limited to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings

Case 2:14-cv-06196-KSH-CLW   Document 50   Filed 12/21/15   Page 14 of 19 PageID: 472

Not for Publication

commenced and inviting district court review and rejection of those judgments"). Jurisdiction to review such state court decisions is reserved for the Supreme Court. *Rooker*, 263 U.S. at 416.

To determine whether the *Rooker-Feldman* doctrine applies to preclude federal jurisdiction, the court looks to four factors: whether "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Khalil v. New Jersey Division of Child Protection and Permanency*, 594 Fed. Appx. 88, 90 (3d Cir. 2015) (quoting *Saudi Basic Industries Corp.*, 544 at 284).

Here, the first and third factors are easily satisfied: Mondelli lost his property rights in a state court proceeding before he filed this suit. On July 30 2012, Judge Malone held "[j]udgment will be entered in favor of plaintiff JSRM [Silverman Realty] to quiet title to the property [the Commercial Property] and requiring defendants to discharge their *lis pendes*," and that "title to the property [the Commercial lot] is properly vested in JSRM [Silverman Realty]." (Malone, J. Letter Decision, 12a, 33a.) Judge Malone reiterated that any interference with the Commercial Property by Mondelli is strictly prohibited. (Id., 37a.) Mondelli filed this action in federal court on October 6, 2014, about two years to the day after Silverman Realty exercised its rights under the judgment by sending its agents onto the garden stand portion of the Commercial Property.

As to the second and fourth factors, *Great Western Mining & Minerals* Co. directs that for *Rooker-Feldman* to apply, the injury must be *caused* by the state court judgment. 615 F.3d at 166. "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state court judgment and not simply

Not for Publication

ratified, acquiesced in, or left unpunished by it." *Id*. at 167. *Great W. Mining & Mineral Co.* provides an example where:

> a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d at 166-67 (citing an example from *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 87 (2d Cir.2005)). Where the "federal plaintiff asserts injury caused by the defendant's actions and not by the state court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction." *Id.* at 167. It is not necessary that the plaintiff ask the court to directly overturn the state court decision nor that the plaintiff seek the same type of redress to find an application of the *Rooker-Feldman* doctrine appropriate. *See Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (applying the *Rooker-Feldman* doctrine despite the different form of damages sought by the plaintiff in his federal claim).

     Mondelli's first claim of relief under § 1983 alleges the defendants conspired to violate his "rights of due process under the fourth, fifth, and fourteenth amendments, and the use and enjoyment of his property." (Compl. ¶ 97.) While full of allegations of constitutional harm, the complaint does not allege any injuries other than the loss of property, and the loss of property was occasioned by the judgment entered in the state court proceedings. In fact, Mondelli spends 18 consecutive paragraphs in his complaint discussing alleged infirmities in the underlying state court decision. (Compl. ¶¶ 56-73.) And in a mere six paragraphs Mondelli recites the following "unconstitutional" behaviors on the part of the Berkeley Heights Municipal Defendants:

- "Instead of enforcing the law and Constitutional Due Process, Victor Mondelli was informed by Detective Michael Delia and John Doe 2 that if he stepped

15

- anywhere near the Garden Stand he would be arrested for trespass." (Compl. ¶ 87.)

- "Defendant Michael Delia informed Victor Mondelli that supervising officer John Doe 1 had ordered him to arrest Victor Mondelli should he attempt to use and enjoy his Garden Stand." (Compl. ¶89.)

- "Chief of Police Michael P. Mathis failed to enforce the law and instead approved of and or directed Michael Delia and John Doe 2 to intimate [*sic*] Victor Mondelli from exercising his Constitutional due process rights and threaten to arrest him for the use and enjoyment of his own property, the subject Garden Stand." (Compl. ¶ 88.)

- "Zoning Officer Thomas Bocko informed Victor Mondelli that he was approving permits for Robert Dowling and Jack Dowling to use his Garden Stand for the use of selling Christmas Trees in the Christmas 2012 season, despite the fact that had [*sic*] illegally dispossessed Victor Mondelli of his Garden Stand and illegally destroyed his property." (Compl. ¶ 90.)

- "The Zoning Officer Thomas Bocko was motivated by the fact [*sic*] dispossessing Victor Mondelli of his Garden Stand would legally moot the hard fought for legal decision grandfathering in the use of the Garden Stand."[1] (Compl. ¶ 91.)

- "Victor Mondelli subsequently learned that the Berkeley Heights Police Department had provided the security for Robert Dowling and Jack Dowling to illegal [*sic*] break the lock that Victor Mondelli had on the Garden Stand and to allow them, JSRM, BRP, Jack Silverman and William Silverman to illegally dispossess the Plaintiff of his property without due process of law." (Compl. ¶ 92.)

Each one of these allegations, after removing unsupported conclusions about the merits (or lack thereof) of the state court litigation, shows that Mondelli seeks relief based on his purported

---

[1] Mondelli claims that he fought to keep the Commercial Property on which the garden stand was located because he won a "bitter protracted litigation with Berkeley Heights in order to obtain a ruling that the use of the Garden Stand was grandfathered in." (Compl. ¶ 38.) Clearly this is part and parcel of another issue decided in state court, which this court declines to review. This fleeting expression of discrimination on the part of one of the municipal defendants does not require this court to dig into the merits of the state court proceeding.

Not for Publication

affirmative property rights in the Garden Stand, notwithstanding the state court judgment that severed his rights to it.  Courts have found repeatedly that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action."  *Reisinger v. Luzerne County*, 712 F.Supp2d 332, 349 (M.D. Pa. 2010) *aff'd sub nom. Reisinger v. Cnty. of Luzerne*, 439 F. App'x 190 (3d Cir. 2011).  This is exactly what Mondelli attempts to do.  For these reasons the Court finds that it lacks subject-matter jurisdiction and dismisses the first claim under § 1983 as to the remaining municipal defendants.

Under *Rooker-Feldman* the Court lacks jurisdiction to review Mondelli's second claim alleging a violation of § 1983, in which he vaguely asserts that the defendants interfered with "fundamental rights to privacy and freedom," "due process, compulsory process, equal protection, and freedom from interference with his fundamental rights as a parent without due process of law." (Compl. ¶¶ 104, 107.)  There is nothing asserted in the complaint about Mondelli's parental rights, indicating that this portion of the complaint is cut and pasted out of an unrelated lawsuit.  Notwithstanding, insofar as the laundry list of constitutional harms in the second claim derives from the facts asserted in the complaint, again Mondelli is asking this federal court to review the state court decision.  *See In Re Knapper*, 40 F.3d 572, 581 (3d Cir. 2005) (holding that *Rooker-Feldman* precluded the plaintiff's due process claim as an attack on the plaintiff's state foreclosure judgment because federal relief would require a finding that the state court judgment was incorrect).  Again, this court declines to review the state court decision and dismisses Mondelli's second claim for relief.

3. § 1983 Claims Barred By Insufficient Pleading

Not for Publication

Where claims stem from an encounter that occurred independently from the state court judgment, the court considers them separately. *See Khalil*, 594 F. at 91. Mondelli's third claim for relief under § 1983 alleges unconstitutional retaliation for protected activity. There is not enough information in the complaint as to whether these protected activities revolve around Mondelli's property rights for the court to dismiss this claim under *Rooker-Feldman*. The court instead looks to whether there is sufficient information to grant relief under FRCP 12(b)(6). To prevail on a retaliation claim, a plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citing *Eichenlaub v. Twp. of Indiana,* 385 F.3d 274, 282 (3d Cir.2004)).

The complaint fails to make any well-pled allegations that might point to the specific constitutionally-protected activity in which Mondelli was engaged. The complaint merely alleges general language, such as that the defendants acted "willfully, knowingly, and purposely, with specific intent of depriving Plaintiff of his rights." (Compl. ¶ 113.) Such language is conclusory and not entitled to be assumed true in assessing this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 663, 680-81 (2009) (deeming language in the complaint that "each knew of, condoned, and willfully and maliciously agreed" as nothing more than a "'formulaic recitation of the elements' of a constitutional discrimination claim," which disentitles them to the presumption of truth"). Mondelli does not ascribe specific conduct to these defendants out of which retaliation could be inferred. As the third § 1983 claim does not meet established pleading requirements, it is also dismissed.

Not for Publication

## V.      Civil Rights Act and Intention Infliction of Emotional Distress Claims

The Court has dismissed Mondelli's federal claims, and declines to exercise its supplemental jurisdiction over his state claims for intention infliction of emotional distress and violations of New Jersey Civil Rights Act. 28 U.S.C. § 1367(c)(3). Accordingly, they are dismissed.

## VI.     Conclusion

"Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Ridge v. Campbell*, 984 F.Supp.2d 364, 372 (M.D.Pa. 2013) (relying on *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir.2002). Leave to amend is futile "where the statute of limitations or some other affirmative defense would compel dismissal of the claim." *Id.* In particular, courts in this district have found that where an abstention doctrine applies as an affirmative defense any amendment to the complaint is futile. *See e.g., Ridge v. Campbell*, 984 F.Supp.2d at 375 (holding that because the *Younger* abstention doctrine applied that any attempt to amend the complaint to assert a viable claim would be futile). All claims pleaded in this complaint demonstrate that Mondelli's attachment to his garden stand and ire about losing it constitute the reason that Mondelli brought these claims. Neither Mondelli's lack of jurisdiction to bring these claims, under the *Rooker-Feldman* doctrine, nor the defects in his pleading can be cured. Based on the foregoing, the defendants' motions to dismiss are granted, and the Clerk of the Court is directed to close this case.[2]

---

[2] Neither defendant Robert Dowling nor Jack Dowling filed a motion to dismiss Mondelli's complaint. Robert Dowling, pro se, filed an answer to the complaint on January 16, 2015. Jack Dowling has not participated in this litigation, and there is no docket entry showing that he was served. Because Robert and Jack Dowling are similarly situated to the other Realty Defendants, the Court dismisses Mondelli's claims against them *sua sponte*.