## LAW OFFICE OF REENA FORST

Admitted to N.Y., N.J. and Wash D.C.

Mailing address: PO Box 613, Englewood, New Jersey 07631   (201) 568-5689   Fax: (201) 568-4479
Office address: 345 Union Street, Hackensack, New Jersey 07601
Email: rforst@rflawfirm.com

January 19, 2016

Honorable Katharine S. Hayden, U.S.D.J.
United States District Court
District of New Jersey
U.S. Post Office and Courthouse Building
Newark, New Jersey 07101

    Re:   Mondelli v. Berkeley Heights Police Department, et als.
           Civil Action No. 14-cv-06196-KSH-CLW
           Our File No.: 5633-82

Dear Judge Hayden:

This office represents Defendants Jack Silverman Realty & Mortgage Co., LLC, Berkeley Realty Partners 244, LLC, Jack Silverman individually, and William Silverman individually ["Silverman Defendants"]. Kindly allow the within to serve as the Silverman Defendants' Letter Memorandum in opposition to Plaintiff's Motion for Reconsideration.

**PRELIMINARY STATEMENT**

The within action arises out of Plaintiff's claims that the Silverman Defendants, along with the other defendants, all conspired to deprive the Plaintiff of his property which was being held in a Garden Stand he maintained on property that had been foreclosed, and that such actions violated his constitutional and civil rights, and intentionally caused him emotional distress.

In the interests of brevity and judicial economy, the Silverman Defendants rely upon and adopt the facts, precedents and legal arguments in the both the Fischer Porter Defendants' (Dkt. No. 18) and the Silverman Defendants' Motions to Dismiss (Dkt. No. 25). Set forth herein are the facts and legal argument which refute Plaintiff's claims and support Defendants' request to deny Plaintiff's motion for reconsideration in its entirety.

The parties have been involved in numerous and contentious lawsuits over the past eight years. This federal action seeks to once again litigate those matters which have already been addressed and

adjudicated by the State Superior Court.

In the within action, Plaintiff alleges that the Defendants violated his First, Fourth, Fifth and Fifteenth Amendments. Plaintiff further alleges a conspiracy between the Defendants to deprive him of his property. Plaintiff alleges that the Defendants are taking retaliatory action against him, and that their actions have caused him emotional distress.

The Third Circuit has stated that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 770 F.2d 906.

To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court … [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. <u>Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999)</u>. To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." <u>P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F.Supp.2d 349, 353 (D.N.J.2001)</u> (internal quotations and citations omitted). *D'Argenzio vs. Bank of America Corp.*, 877 F.Supp.2d 202, 207 (U.S. Dist. Ct. 2012)

The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly." [Citations omitted.] *D'Argenzio* at 207.

Mondelli is claiming is that the Court incorrectly applied the *Rooker-Feldman* doctrine. Mondelli further claims that the Court overlooked that the Plaintiff was threatened with arrest by the Municipal Defendants, thereby rendering the Municipal Defendants as more than just neutral bystanders, and that is sufficient to overturn the Court's ruling that the Plaintiff cannot maintain his current lawsuit.

**Rooker-Feldman**

The Court clearly laid out all of the elements to consider in determining if the *Rooker-Feldman* doctrine applies in this matter. The Court then considered each factor, and rendered a clear and comprehensive determination of how each factor applied to the within action.

Plaintiff complains that the Court's Order did not mention Plaintiff's ongoing assertion that the Municipal Defendants had no authority to act in the absence of a Warrant of Removal or Writ of Possession. This is merely Plaintiff's way of once again arguing the outcome of the Chancery Division action, and raising spurious and unsupported claims in an attempt to inject a civil rights flavor into his

Complaint. There has been no dispute that the Silverman Defendants are not state actors. Plaintiff's only hope of keeping this matter in federal court was to allege that the minimal involvement of the Municipal Defendants amounted to an improper dispossession of his property in violation of Section 1983. If actions like this were permitted to proceed, the litigation floodgates would be opened, and every litigant in every court action that involved any governmental employees – clerks, sheriffs, court officers, police officers, and even judges - would be able to commence an action in federal court to re-litigate state court decisions at will. This would allow frivolous and repetitious claims to be brought by disgruntled and non-prevailing parties, and would tie up the courts immeasurably. This is precisely the kind of litigation that the *Rooker-Feldman* doctrine is designed to prevent.

Plaintiff's current Complaint alleged constitutional claims arising out of all of the Defendants' actions in furtherance of rights granted to the Silverman Defendants by the state court. The Court's July 30, 2012 Order finding, definitively, that title had completely vested in the Silverman Defendants and that Plaintiff was barred from interfering with the Silverman Defendants' ownership and use of the property is dispositive. Since Plaintiff's federal action is necessarily tied to the State Court action, where this matter has been litigated and adjudicated, the dismissal of his action is entirely proper.

**Court's consideration of the facts and law**

Contrary to Plaintiff's arguments that the Court's Opinion fails to mention the threat of arrest, on Page 6 of the Court's Opinion, the Court specifically referenced the allegation in Plaintiff's Complaint that the Municipal Defendants threatened to arrest Plaintiff if he entered the Garden Stand. Clearly the Court did not overlook that fact.

The Court also considered the case relied upon by Plaintiff, namely *Mitchell vs. Geida*, an unpublished opinion citing to *Abbott v. Latshaw*, 164 F.3d 141 (3rd Cir. 1998). However, the Plaintiff fails to point out that the facts in *Mitchell* and *Abbott* differ significantly from Plaintiff's situation.

The Court in *Mitchell* actually supports this Court's holding. The *Mitchell* Court found no constitutional violations notwithstanding that the repossession was based solely on an agreement between the parties (no court order or writ of possession was in effect), an off-duty police officer took active part in assisting with the repossession, an on-duty police officer disconnected an on-site alarm, and the on-duty police officer asked the Plaintiff to leave the building where the repossession was being conducted. The *Mitchell* court found that the off-duty police officer was acting in a purely private capacity, and that the on-duty officer acted solely as a "neutral peace officer" despite permitting the repossession to take place and even confronting the Plaintiff.

As the Court reiterated in *Mitchell*, "an officer's presence at the scene of, and acquiescence in, a private repossession is not state action unless accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party." [citations omitted]. *Mitchell* at 165.

The *Mitchell* Court draws a distinction to *Abbott*, in which the Plaintiff was threatened with arrest when he resisted the repossession. In *Abbott*, the individual Defendant Latshaw seized the Plaintiff's vehicle, with assistance from a county constable (whom she had paid), notwithstanding that Plaintiff was in rightful possession of the car. There had been no adjudication in favor of Latshaw, no agreement that she could take the vehicle, and no Order establishing ownership of the vehicle in her. Furthermore, the Plaintiff had been given no notice of the impending seizure. He was threatened with arrest at the moment he was first confronted by the repossession, which was also the very first time he had the opportunity to dispute the illegal repossession, refute Defendant's claims, and establish his ownership of the vehicle. The police were then summoned, and after reviewing the paperwork that Latshaw handed them, one officer made a definitive determination that Latshaw was entitled to immediate possession of the vehicle (again, in the absence of any court order), and allowed Latshaw to take the vehicle. It was this determination that gave rise to the 1983 claim against that particular police officer. The Court found that the other two officers, having arrived solely to check Latshaw's paperwork, had not violated Plaintiff's constitutional rights.

The *Abbott* Court allowed the Plaintiff to maintain his Section 1983 claims against Defendant Lawshaw, the constable, and the one police officer, because of Defendant Latshaw's behavior in hiring the constable to pursue her illegal repossession, and because of the police officer taking it upon himself to decide her claims were legitimate.

The *Abbott* court also noted that a party is entitled to advance notice of a deprivation of liberty or property, and is entitled to a meaningful opportunity to be heard, neither of which occurred in *Abbott*. There can be no doubt that Mondelli has had meaningful and frequent opportunities to be heard. He has engaged in ongoing state and federal court litigation for nearly a decade, and has lost at every step. Mondelli, like the *Mitchell* Plaintiffs [*Mitchell* at 166], was on notice that the Silverman Defendants would be taking action to secure their interest in the property and use it for their own purposes. From July 2012 onward, Mondelli was on notice that the Court had held that he had been properly and legally divested of all interests in the property, and confirmed that the property had vested in the Silverman Defendants. Plaintiff further confirms his knowledge of the Defendants'

intentions to use the property which was discussed in the October 4, 2012 telephone conference with the court (Paragraphs 75-77 of Plaintiff's Complaint), and in which discussion Mondelli's counsel participated. Unlike the Plaintiff in *Abbott*, who had no advance notice and was not aware of Latshaw's actions before she showed up at his place of business with a constable, Plaintiff had ample opportunity to voice his objections to the Silverman Defendants' claims. He also had the chance to protect his personal property by removing it from the real property once the Chancery Court ruled against him in July 2012. Like the *Mitchell* Plaintiffs, Mondelli chose to take no action, believing the Defendants to be wrong. He cannot now blame the Defendants' for the supposed loss of any property allegedly left on the property.

Even if Mondelli was advised he would be arrested for entering the property, it was not in the course of his objecting to the repossession or protecting his property (like what happened in *Abbott*). In fact, such statements were not even made at the time either the Plaintiff or the Defendants were at the property; see Plaintiff's Complaint, Paragraph 86, which states that it was <u>after</u> the purported "illegal removal of the subject property" that Plaintiff was advised he would be arrested for entering the Garden Stand. That was apparently also when he first learned the Municipal Defendants had provided security for the repossession. There was no confrontation or intimidation as there was in *Abbott*. Mondelli could have once again have applied to the state court if he felt he had any legal basis on which to continue disputing the Silverman Defendant's interests in the property.

Plaintiff further argues that *Jaccard v. Bank of America*, Dkt No. 14-7535, 2015 WL 4461873 (D.N.J. July 21, 2015) supports his claim that a Writ of Possession or Warrant for Removal were required before Plaintiff's could be dispossessed of his supposed tenancy interest in the property. Aside from the fact that the Silverman Defendants' disagree with Plaintiff's position, this was an argument that needed to be presented at the state court level, and not used to file a new action against the same parties. Plaintiff's attempts to couch his claims as constitutional violations are faulty, as confirmed by the *Jaccard* Court, which held that "[]even private actors who can be considered state actors through the joint action theory are entitled to qualified immunity. Thus, if a reasonable person would have thought that the taking . . . was proper and that Plaintiff did not have any right to be present . . .then the Defendants are entitled to qualified immunity even if Defendant is correct that her rights were violated." [Citations omitted] *Jaccard* at 3.

Clearly, based on the Court's Order of July 30, 2012, a reasonable person could conclude that the Silverman Defendants had unrestricted title and possession to the property, especially in light of

the Court's specific ruling that the Plaintiff was "permanently enjoined from interfering with the development or any efforts by the [Silverman Defendants] to convey the property." Plaintiff's continued use of the property for his Garden Stand was clearly in direct conflict to the Court's ruling, and any reasonable person would believe that removing the Plaintiff from the property was a proper means by which the Court's ruling would best be carried out. Furthermore, a reasonable person could certainly conclude that the Plaintiff's allegations that the Fischer Porter Defendants' advised the Silverman Defendants to remove the Plaintiff's property from the Garden Stand confirmed the Silverman Defendants' belief that the removal was proper.

Plaintiff's additional claim that the extent of the conspiracy would have been "revealed in depositions" is the cry of the desperate and nothing more than a fallback position when all else has failed. If the courts were swayed by claims that discovery and depositions would yield facts needed to even allege a claim, all litigants would be able to defeat Rule 12(b)(6) in every matter merely by making such an assertion. Furthermore, the Plaintiff never propounded any discovery on the Defendants, thereby refuting his own position that he has been denied the discovery he needs to support his allegations.

There is no law or fact that the Court has overlooked. The Court has correctly noted, on Page 11 of the Opinion, that "[t]he mischief that would result were the law not rigorous in this regard [transforming parties into state actors merely resulting from the parties' use of police officers' services] does not need elaboration." Plaintiff's actions in repeatedly appealing his cases, and then filing new lawsuits in both the state and federal courts are proof of such mischief. Mondelli clearly is attempting to use a constitutional claim to sustain the same cause of action that has already worked its way through the state court for nearly a decade, and which he lost nearly four years ago. He must not be permitted to continue wasting judicial resources this way.

As the Court, in its Order and Opinion of December 21, 2015, has clearly considered all aspects of the Plaintiff's claims, and has determined that Plaintiff is not entitled to relief, and for all of the reasons set forth herein, the Plaintiff is not entitled to reconsideration of the Court's Order. Therefore, the Silverman Defendants respectfully request that the Court deny the Plaintiff's motion for reconsideration.

Respectfully submitted,

Reena Forst, Esq.

RF/